**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Eugene KNIESS, Defendant-**
**Appellant.**

**No. 12370.**

United States Court of Appeals
Seventh Circuit.

March 2, 1959.

Rehearing Denied April 8, 1959.

Zeamore A. Ader, Chicago, Ill., for appellant.

George E. Rapp, U. S. Atty., Dudley H. Davis, Jr., Asst. U. S. Atty., Madison, Wis., for appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

DUFFY, Chief Judge.

This is an appeal from the denial of a motion made by defendant Kniess under § 2255, Title 28 U.S.C., to vacate and set aside a sentence imposed on him by the District Court for the Western District of Wisconsin. The motion was predicated on the alleged non-compliance with Rule 5(a), Federal Rules of Criminal Procedure, 18 U.S.C. This rule provides that an officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant, shall take the arrested person, without unnecessary delay, before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the United States.

Defendant was arrested at New Richmond, Wisconsin, at 2:00 a. m. on June 18, 1956. He was taken to the county jail at Hudson, Wisconsin. Among other things found in his possession were approximately 900 blank postoffice money orders. About 8:00 a. m. on the same day, a postal inspector commenced questioning the defendant. In the late afternoon of that day, defendant gave the inspector a statement admitting, among other things, that he had forcibly broken into the postoffice at Wells, Texas, and had stolen therefrom postal cards, stamps, and money orders. On the second day after his arrest, June 20, 1956, defendant was taken before a United States Commissioner at Eau Claire, Wisconsin. Eau Claire is seventy-one miles distant from Hudson, Wisconsin.

On June 26, 1956, defendant appeared before the District Court for the Western District of Wisconsin for the purpose of executing a waiver of indictment. By that time an information had been obtained from the Eastern District of Texas, Tyler Division, charging the forcible entry of the postoffice at Wells, Texas, and the theft of postal cards and stamps.

After asking the defendant's age and residence, the Court said: "Now, when a defendant is brought into this Court, he has a right to be represented by a lawyer if he desires; and if he doesn't have money or property with which to employ a lawyer or pay for a lawyer's services, the Court will appoint one for him."

"Defendant Kniess: Yes, sir.

"The Court: Now, if you want one—do you desire a lawyer?

"Defendant Kniess: I believe under the circumstances, your Honor, I believe I would just leave it up to the Court for the fairness with respects to the charge.

"The Court: In other words, you waive the right to counsel; is that it?

"Defendant Kniess: Yes, sir.

"The Court: All right."

Mr. Kniess then signed in open court a waiver of prosecution by indictment and consented that the proceeding could be by information.

The United States Attorney then announced to the Court that the defendant desired to have the matter transferred to the Western District of Wisconsin under Rule 20, Federal Rules of Criminal Procedure. The following colloquy then occurred:

"The Court: Do you understand what the District Attorney has said —that, while this case is pending down there, he says you want to have it brought up here in Wisconsin, in this District, and heard here?

"Defendant Kniess: Yes, sir."

At this point, the United States Attorney informed the Court of the substance of the two counts of the Texas information. He informed the Court that about 1,000 blank money orders were stolen, and that the defendant improvised a rubber stamp and that he had cashed a substantial number of them, as slightly more than 900 were found in his possession when apprehended.

When the Court asked defendant if he had given the District Attorney all the information about these money orders, he corrected the Court and said that the statement was made to the postal inspector and not the District Attorney.

Upon receiving information that defendant had passed a large number of forged postoffice money orders in Colorado, an information dated August 6, 1956, was obtained from the United States District Court in that state. This information contained ten counts charging defendant with forging and counterfeiting eight postoffice money orders for $100 each and two for $50 each. On August 30, 1956, defendant was brought before the Court in the Western District of Wisconsin, and a copy of the information pertaining to the Colorado charges was given to him.

In defendant's presence, the United States Attorney informed the Court as to 35 money orders the defendant had counterfeited and cashed and explained that his investigation as to the other money orders which had been cashed by defendant had not been completed, but that he felt defendant should not be kept longer in the county jail.

The transcript of this hearing shows the following colloquy after the ten counts of the information had been read in defendant's presence:

"The Court: You know that you have a right to be represented by a lawyer; and if you don't have money to hire a lawyer the Court will appoint one for you?

"The Defendant: Yes.

"The Court: Do you wish to have the Court appoint a lawyer to represent you in these cases?

"The Defendant: No, sir. I would rather have the Court handle it as he sees fit."

The defendant then entered a plea of guilty to the charges in the Texas information as well as the one referring to the offenses in Colorado. In fact, after pleading guilty to the first count of the Colorado information, the Court said:

"The Court: At other places named in this information—and what is your plea to Counts 2, 3, 4, 5, 6, 7, 8, 9 and 10?

"The Defendant: Guilty to each count, your Honor.

"The Court: To each count?

"The Defendant: Yes, sir."

The Court then asked the defendant if he had anything to say to the Court be-

fore sentence was imposed, and the defendant voluntarily mentioned his past record, and in the ensuing discussion told the Court that record included robbery, having possession of unregistered firearms, grand larceny, and that while the record showed armed robbery, he insisted that such robbery was committed while he was unarmed. He further stated to the Court he had spent about seven years in prison.

The Court imposed a sentence of four years on each count in the Texas information and three years on each count in the Colorado information, but provided that the sentences should be concurrent so that the net effect of the sentence was one for four years.

Kniess first contends that the admitted violation of Rule 5(a) FRCrP by law enforcement officers invalidates his subsequent conviction and sentence. He relies upon McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100; and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. In each of these cases the Supreme Court held that confessions made by a defendant were inadmissible where obtained in violation of the provisions of Rule 5(a). In Mallory, the period of detention prior to the confession corresponded roughly to the period in the case at bar. For the purposes of this appeal, the Government concedes that if this case had gone to trial, the Kniess confession would have been inadmissible under the McNabb-Mallory rule.

In this case circumstances do not exist which call for the application of the McNabb rule. Kniess elected to plead guilty to all charges. Thus, it was unnecessary for the Government to use the confession against him.

Kniess argues that a "delay confession" within the contemplation of the McNabb rule, is a violation of his constitutional rights which invalidates, without

more, his conviction. However, in McNabb, the Supreme Court was careful to point out that in announcing that rule, it did so without reaching the Constitutional issue of self-incrimination which was urged there. Later, in Gallegos v. State of Nebraska, 342 U.S. 55, at pages 63–64, 72 S.Ct. 141, at page 146, 96 L.Ed. 86, the Court said: "The rule of the McNabb case * * * is not a limitation imposed by the Due Process Clause."

Kniess admits that his plea was entered freely. He claims, for the first time on appeal,[1] that he was ignorant of his rights at the time he entered his plea. He also claims that his waiver of counsel was made without any appreciation of his legal circumstances. He relies heavily on Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, in claiming the District Court failed to take the steps necessary to insure that he was intelligently waiving his right to counsel.

It is undisputed the district judge did not inform Kniess that his confession would not be admissible if he should elect to stand trial; nor did the court explain the range of allowable punishments. But this was unnecessary in the circumstances of this case. We are convinced he had "a broad understanding of the whole matter." 332 U.S. 708, at page 724, 68 S.Ct. 316, at page 323.

Kniess was not an ignorant, inexperienced youth. He was thoroughly familiar with his surroundings when he was in court. He volunteered information as to his previous record, and that he had spent seven years in prison. He corrected the judge when the latter made an inaccurate statement. A reference to statistics on comparable sentences in criminal cases gives a strong indication why Kniess was anxious to have his case disposed of in the Western District of Wisconsin rather than to be sent back to Texas for trial or other disposition.

At no time has Kniess ever claimed to be innocent of the charges

[1.] This argument made on this appeal was heard and answered by counsel for the Government. No good purpose would be served by avoiding a decision upon the merits on this point.

placed against him. There is no indication of any doubt or confusion on his part. Furthermore, in accepting the defendant's waiver and plea, the district judge was entitled to take into account "the background, experience and conduct of the accused," Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, all of which pointed to an informed, intelligent waiver by Kniess.

We approve as applicable to the case at bar, the statement of the court in United States v. Calp, 4 Cir., 83 F.Supp. 152, 156:

> "There is nothing in the case to show that this plea was other than free and voluntary. The defendant was not a youth without prior experience in criminal cases. And there is nothing to show that at the time he entered his plea of guilty after waiving the appointment of counsel, he was acting under any undue influence or misconception or imperfect understanding of his situation and the consequence of his plea. In fact quite the contrary affirmatively appears from the record. While it is certainly required that careful consideration should be given by the trial judge to a motion of this kind, in order to correct if necessary a hasty or improvident sentence, it is equally appropriate to observe that judicial decisions made in open court as a result of due process should not be lightly vacated."

Kniess also contends that as the informations to which he pleaded guilty were based upon a confession illegally obtained, the judgments of conviction were void and cannot support the sentence imposed. We do not agree. We think Kniess' waiver of his right to counsel and his plea of guilty were valid and that he may no longer object to any defect in the informations not going to the jurisdiction of the court. United States v. Washington, 3 Cir., 237 F.2d 632. Defects in an information not going to the jurisdiction of the court are not open to collateral attack. Brant v. United States, 5 Cir., 218 F.2d 808; Keto v. United States, 8 Cir., 189 F.2d 247; United States v. Hoyland, 7 Cir., 264 F.2d 346.

Both sides have referred to United States v. McGee, 7 Cir., 242 F.2d 520. We have not considered the holding in that case or the language in the opinion as that judgment has been vacated by the Supreme Court in a one-paragraph *per curiam* opinion. 355 U.S. 17, 78 S.Ct. 64, 2 L.Ed.2d 23.

Defendant's first brief was prepared *pro se*. The printed reply brief was prepared by Zeamore A. Ader, Esq., of the Chicago Bar, court-appointed counsel. We express our appreciation for the able services rendered by Mr. Ader. We also note with approval that the United States Law Printing Company of Chicago printed the reply brief as a public service.

Affirmed.