**Robert E. MEYER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19678.**

United States Court of Appeals, Eighth Circuit.

April 20, 1970.

---

Lay, Circuit Judge, dissented.

lett, Jr., U. S. Atty., St. Louis, Mo., for the brief.

Before BLACKMUN, MEHAFFY and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

Robert E. Meyer appeals from an order of the United States District Court for the Eastern District of Missouri, Eastern Division, denying, after an evidentiary hearing, his motion to withdraw his plea of guilty to a charge of forcibly breaking into a United States Post Office at Webb City, Missouri. The grounds set forth in his motion and his assignments of error here are (1) that his plea was involuntary as a result of threats and coercion by federal agents; (2) that he signed the waiver under Rule 20 against his will; and (3) that he was inadequately represented by counsel. We affirm the judgment of the district court.

The original petition was filed *pro se* as a § 2255 motion on June 24, 1968 and was amended on August 13, 1968, setting out the allegations of facts with more particularity. Meyer petitioned the court for appointment of counsel and present counsel was appointed on October 29, 1968. The plenary evidentiary hearing was held on December 13, 1968.

On March 13, 1968, a complaint was filed in the Western District of Missouri (Kansas City) by W. L. Ruddell (sometimes spelled Rudell), a postal inspector at Kansas City, charging Meyer with forcibly breaking into a United States Post Office at Webb City, Missouri on or about October 23, 1964, with intent to commit larceny and other depredation therein in violation of 18 U.S.C. § 2115. The complaint was based on statements made to Ruddell by Richard W. Christenson (sometimes spelled Christianson) and William A. Conway to the effect that Meyer forcibly broke into the Webb City Post Office with them and attempted to open the vault with an acetylene torch. Meyer was arrested in St. Louis, which is in the Eastern District of Missouri, on a Commissioner's warrant on March 15, 1968, and was released the

Francis L. Barkofske, St. Louis, Mo., for appellant and filed brief.

James M. Gordon, Asst. U. S. Atty., St. Louis, Mo., for appellee, Daniel Bart-

same day on a $1,000.00 recognizance bond returnable in the United States District Court, Western District of Missouri, Kansas City.

An information was filed March 27, 1968 in the Western District (Kansas City), charging Meyer with forcibly breaking into the Webb City Post Office, and on April 2, 1968, Meyer signed a consent to transfer the case to the Eastern District (St. Louis), where he had been arrested, for a plea of guilty and sentencing under Fed.R.Crim.P. 20.

Meyer was scheduled to be arraigned and enter his plea on April 12, 1968, but when he appeared in court without an attorney Judge Meredith appointed Mr. Tom P. Mendelson to represent him and continued the case to April 19, 1968. When Mr. Mendelson was notified of his appointment he contacted the Assistant District Attorney who was handling the case, Mr. Francis Murrell, who told him that Meyer had a somewhat extensive prior record and that he had signed a consent to transfer under Rule 20 and indicated a desire to plead guilty. Murrell said he had instructed Meyer to go to Mendelson's office that day and talk with him about the case. However, Meyer and Mendelson did not get in touch with each other until the following week when they talked by telephone.

Mendelson testified that during the telephone conversation he told Meyer that although the Rule 20 consent for transfer which Meyer had signed contained a statement that he wished to plead guilty, nevertheless, he had a choice to plead guilty or not guilty. Mendelson further told him that if he pleaded guilty, he waived his right to trial in the Western District (Kansas City) and would be sentenced in the Eastern District (St. Louis). He explained to Meyer that the judge would inquire whether he understood the charge; whether his plea of guilty was a voluntary one; whether he did, in fact, commit the crime; whether there were any threats or promises made; etc. Meyer claims that there was no discussion concerning whether he was innocent or guilty, but Mendelson says that Meyer told him he had not committed the crime and Mendelson advised him that if he were innocent he should be able to establish his innocence and that he would have an opportunity to do so, but that he, Meyer, not Mendelson, knew whether he was in fact guilty and should make the decision. Mendelson told him that if he chose not to plead guilty before the court in the Eastern District that his file would then be retransferred to the Western District where he would stand trial, which is the procedure under Rule 20. Meyer replied that he had been told that if he were tried in the Western District he would probably be charged on two counts and could get up to a 15-year maximum sentence and that it was his intention and desire to plead guilty in the Eastern District. Mendelson asked him to think the matter over and let him know the morning of the hearing whether he wanted to plead guilty or not guilty.

Mendelson did not make any independent investigation, but he and Meyer talked about Meyer's criminal record and he told Meyer he would probably be dealt with rather severely because of it.[1] He said Meyer did not appear to be "scared" or "frightened," but, contrarily, exhibited some experience in these matters and appeared to be "most clairvoyant" as to just what the procedure was and what chances he had of achieving probation, and that he was pretty knowledgeable about the whole criminal process. Meyer told Mendelson that he had been hopeful that his plea of guilty would have been entered on the 12th when he appeared for arraignment with-

---

1. Meyer's criminal record includes car theft, 1949 ($100.00 fine); writing bogus checks, 1952 (six months in city workhouse); tampering with an automobile, 1954 (four months in county jail); writing bogus checks, 1956 (two years); stealing over $50.00, 1958 (four years); writing bogus checks, 1961 (three years); and stealing over $50.00 (bad debt), 1964 (one year).

out counsel because if it had been he "would have been back here faster than you can bat an eye." Mendelson interpreted this to mean that Meyer thought that if he had been sentenced that day, he could have been successful in a proceeding to have the conviction and sentence set aside because the guilty plea was entered when he was without counsel. Mendelson said that Meyer told him that he had not been coerced or threatened and Meyer confirmed at the evidentiary hearing that he had made this statement to Mendelson during their telephone conversation prior to arraignment.

2. The following are some excerpts from the proceedings before Judge Meredith on April 19, 1968, when Meyer entered his plea of guilty:

"THE COURT: How do you plead, Mr. Meyer, guilty or not guilty?

"DEFENDANT MEYER: I plead guilty.

"THE COURT: What?

"DEFENDANT MEYER: I plead guilty.

"THE COURT: Before accepting your plea of guilty, you understand this information charges you with on October 23rd, 1964, at Webb City, Missouri, breaking into a United States Post Office with intent to commit a larceny?

"DEFENDANT MEYER: Yes, Your Honor.

"THE COURT: You also understand that on your plea of guilty you may be sentenced to five years in the custody of the Attorney General and a fine of a thousand dollars?

"DEFENDANT MEYER: Yes, Your Honor, I understand.

"THE COURT: Has anyone made any threats or promises to you in order to obtain this plea of guilty?

"DEFENDANT MEYER: No sir.

"THE COURT: It is a voluntary matter on your part?

"DEFENDANT MEYER: Yes, sir.

"THE COURT: And you did commit the offense?

"DEFENDANT MEYER: Yes, sir.

"THE COURT: The Court will accept your plea of guilty.

"MR. MURRELL: If Your Honor please, if you desire a statement at this time, I will make it. I think perhaps you will want to hear it now.

"THE COURT: Very well.

Meyer appeared in court with Mendelson on April 19, 1968, signed a waiver stating that he had been advised of the nature of the charge against him and of his rights and that he thereby waived in open court prosecution by indictment and consented that the proceeding could be by information instead; and the court, after interrogating him and determining that his plea was guilty, also determined that it was voluntarily made, without any threats or promises, and that he understood that on his plea of guilty he could be sentenced to five years in the custody of the Attorney General and given a $1,000.00 fine.[2]

"MR. MURRELL: According to the report, the investigation report, that I have from the postal inspector at Kansas City, on the night of October 23rd, 1964, this defendant along with one, R. W. Christenson, and W. A. Conway, both of whom I believe are presently under sentence, forcibly entered a government owned post office building in Webb City.

"They pried open a window in a corner of the building. They forced six of the interior doors, and they attacked the vault by breaking off the combination dials and burning two holes in the vault doors with an acetylene torch. However, they were unsuccessful in opening the vault, and there was no loss to the post office.

"This defendant is one of twenty who were indicted up in Kansas City in March of '67. That indictment related to a conspiracy to burglarize post offices, injure government property, receive stolen stamps and stolen post office property, not only in Kansas City, Missouri, but elsewhere in the state. In that case there were eighteen convicted, either through trials or guilty pleas. And I understand a couple of the defendants testified for the government in that case. One of them was Mr. Christenson. The indictment was dismissed as to this defendant by our office up there. Then * * * this charge was filed against him, and he was arrested here in St. Louis on a Commissioner's Warrant.

 * * * * *

"Now, as to his history. He has a considerable criminal record. He is thirty-six years old. He is married. He has a high school education. To summarize his history * * * [see summary of convictions in n. 1].

The court thereafter sentenced Meyer to five years in the custody of the Attorney General but granted a stay of execution of the judgment and sentence until April 29, 1968, and released him on his $1,000.00 bond then in force until that date. He was delivered to the St. Louis City Jail on April 29, and to the United States Penitentiary at Leavenworth, Kansas on May 6, 1968. The following month this action was filed.

Petitioner contends on this appeal that following the evidentiary hearing the judgment of conviction and sentence should have been set aside, that he should have been allowed to withdraw his guilty plea, and that a jury trial should have been granted to determine his guilt. He contends that the signing of the waiver under Fed.R.Crim.P. 20 and the subsequent plea of guilty were induced by threats and promises and were thus the product of unlawful coercion which entitles him to have his sentence vacated, citing Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); United States ex rel. McGrath v. LaVallee, 319 F.2d 308 (2nd Cir. 1963); and Euziere v. United States, 249 F.2d 293 (10th Cir. 1957), all of which are inapposite in that an evidentiary hearing was not held in any of them.

In the *Machibroda* case, *supra*, the question on appeal was whether a hearing should have been held to determine the truth of the allegations in the petition. The Supreme Court held that it was error for the district court to make findings on controverted issues of fact without notice to the petitioner and without a hearing. The facts here are entirely different from the facts in the *Machibroda* case. In this case, a full evidentiary hearing was held. There was no misrepresentation concerning the length of sentence petitioner would receive if he pleaded guilty to this charge,

as was the case in *Machibroda*. This is clearly shown from the record at the time petitioner entered his plea of guilty and was also admitted by him at the evidentiary hearing on his present petition. At the time of the plea on April 19, 1968, the following transpired:

"THE COURT: Before accepting your plea of guilty, you understand this information charges you with on October 23rd, 1964, at Webb City, Missouri, breaking into a United States Post Office with intent to commit a larceny?

"DEFENDANT MEYER: Yes, Your Honor.

"THE COURT: You also understand that on your plea of guilty you may be sentenced to five years in the custody of the Attorney General and a fine of a thousand dollars?

"DEFENDANT MEYER: Yes, Your Honor, I understand."

Meyer stated at the evidentiary hearing that he remembered being informed by the judge that he could be sentenced to five years, and that no one ever promised him that he would receive less than five years on the charge. This was the length of sentence that he received, and the court did not fine him in any amount.

The second case cited by petitioner, United States ex rel. McGrath v. LaVallee, *supra*, was likewise reversed because no hearing was held to determine the validity of the petitioner's charges. In the third case relied upon, Euziere v. United States, *supra*, there was also no hearing, but in that case which is factually dissimilar from this one, the court reversed because of statements made by the trial court, which is not the situation here.

All of the witnesses denied that they advised Meyer to plead guilty. Bruce C. Houdek, an Assistant District Attorney in Kansas City, said that he mentioned

"THE COURT: Mr. Meyer, is that a correct statement of your past criminal record?
"DEFENDANT MEYER: It sounds pretty much like it, Your Honor.

"The COURT: Do you have anything to say to the Court before sentence is imposed?
"DEFENDANT MEYER: No, Your Honor."

to W. L. Ruddell, a postal inspector, that if he had to try the case he would seek an indictment on both forcible entry of the Post Office at Webb City and damage to government property since he would have a better chance of conviction by charging both. Houdek did not mention this to Meyer but Ruddell did at the time he informed him that the indictment against him on a conspiracy charge had been dismissed. (Meyer had been indicted in Kansas City in March, 1967, along with twenty others on a charge of conspiracy to burglarize post offices, injure government property, and receive stolen stamps and post office property. Eighteen were convicted either through trials or guilty pleas and the conspiracy charge against Meyer was dismissed prior to the filing of the information here. See n.2.) Meyer was advised of his rights and signed a waiver prior to his conversation with Ruddell. Ruddell told Meyer that the United States Attorney's office in Kansas City had indicated that he would be prosecuted for the Webb City burglary and had said that two confederates of Meyer had told the government that Meyer had participated in the burglary, that he had stayed with them at the home of some people named McGee in Webb City, and that Mrs. Christenson, wife of one of the burglars, would testify that she had driven the three of them to the Post Office. Ruddell pointed out to Meyer that he could be charged with the burglary, with a possible sentence of five years, and also with destruction of government property (which carries a possible ten-year sentence). He also told Meyer that if he wished to consent to the filing of an information, possibly the United States Attorney's office would agree not to prosecute on the offense of destroying government property, and he later confirmed this in a letter to Mr. R. R. Cullom (sometimes spelled Collum), a postal inspector in Kansas City, who conveyed the message to Meyer. No one from the District Attorney's office ever talked to Meyer concerning this and neither Ruddell nor Cullom ever recommended to him what plea he should enter.

■ As hereinbefore stated, Mendelson, Meyer's attorney, testified that he advised Meyer that he could either plead guilty or not guilty at the April 19 hearing even though he had signed a consent to transfer for the purpose of pleading guilty, that he knew whether he was innocent or guilty, and that if he were innocent and pleaded not guilty he would be given an opportunity to prove it.[3]

■■ Meyer, however, chose to plead guilty rather than allow the case to be transferred to Kansas City, evidently because he felt that he would be convicted if tried there and might receive a longer sentence, which was possible if he were tried for both breaking and entering a United States Post Office and destroying government property. Meyer testified at the evidentiary hearing that Mendelson told him that if he "did anything but plead guilty the case would be transferred back to Kansas City," and

---

3. It is not contended that Meyer did not know that the consent to plead guilty which he signed could not be used against him if he changed his plea to not guilty, but even if he did not know this there would be no reversible error. In Cantrell v. United States, 413 F.2d 629, 632 (8th Cir. 1969), we held that "where a defendant seeks to have his sentence vacated on the ground that he would not have pleaded guilty had he been aware that the confession was not admissible in evidence, the courts, including this one, have ruled that this does not render the guilty plea involuntary where the defendant has been informed of the charge against him, of the possible penalties, and of his rights at the time of entering his plea." To the same effect see Semet v. United States, 369 F.2d 90, 92 (10th Cir. 1966); Snipe v. United States, 343 F.2d 25, 28 n.5 (9th Cir. 1965), cert. denied, 382 U.S. 960, 86 S.Ct. 440, 15 L.Ed.2d 363 (1965); United States v. Wagner, 309 F.2d 7, 8 (6th Cir. 1962); United States v. French, 274 F. 2d 297, 298–299 (7th Cir. 1960); United States v. Kniess, 264 F.2d 353, 357 (7th Cir. 1959); and Hall v. United States, 259 F.2d 430, 431, 432 (8th Cir. 1958), cert. denied, 359 U.S. 947, 79 S.Ct. 728, 3 L.Ed.2d 680 (1959).

added "I didn't want that because I was afraid of the indictment." This indicates that even at the hearing he was still of the opinion that pleading guilty to the charge in St. Louis was preferable to having the case transferred to Kansas City where he could legitimately be charged on two counts. Even though he was told by the postal authorities that the district attorney in Kansas City had indicated that he would attempt to get an indictment on both counts, this does not amount to a threat or coercion since the district attorney has the right to proceed with any prosecution that is warranted under the factual situation.

In the recent case of Ford v. United States, 418 F.2d 855 (8th Cir. 1969), where the petitioner charged that he had been "threatened" that if he did not plead guilty to the federal charge against him, he would be turned over to state authorities, Judge Gibson said:

"A threat to prosecute under state law where the facts warrant prosecution should not be considered as coercive or intimidating. To constitute fear and coercion on a plea 'Petitioner must show he was subjected to threats or promises of illegitimate action'; and fear of a greater sentence may induce a valid plea of guilty. (Citation omitted.) The state charge had already been filed and the State certainly has the right to proceed with any prosecution that is warranted under the factual situation."

This court affirmed the action of the district court which found that Ford, after consulting with counsel appointed a week earlier, made a measured and deliberate choice and voluntarily entered a plea of guilty to the federal charge, and that it was a calculated move on his part to avoid what he considered a worse fate, *i.e.*, his prosecution for additional offenses. Such was the case here.

■ Although this case does not present a true plea-bargaining situation, as no one at the District Attorney's office talked with Meyer or urged or bargained with him to plead guilty, never-

theless, it should be pointed out that plea bargaining does not of itself render a guilty plea involuntary. In Ford v. United States, *supra*, we said:

"We first note without going into the merits and ethics of plea bargaining the practice of plea bargaining in and of itself does not make a plea of guilty involuntary or void. (Citing cases.)"

In United States ex rel. Rosa v. Follette, 395 F.2d 721, 724 (2nd Cir. 1968), the court said:

"Indeed, if attended by proper safeguards and subjected to comprehensive examination, this court has perceived no bar—either in the words of the Constitution or in notions of fundamental fairness—to convictions based upon plea arrangements with the prosecutor. (Citation omitted.)"

In Brown v. Beto, 377 F.2d 950, 956–957 (5th Cir. 1967), the court said:

"Properly safeguarded plea discussions and plea agreements between an accused and a *prosecutor* are consistent with the fair administration of justice. They are a 'pervasive practice. The great majority of criminal cases are disposed of by pleas of guilty, and a substantial number of these pleas are the result of prior dealings between the prosecutor and the defendant or his attorney'.
\* \* \*

"\* \* \* Prosecuting attorneys \* \* \* traditionally have had broad authority to institute criminal charges and to evaluate the charges in terms of society's interest in individual cases. When the prosecutor and the accused enter into an agreement their conflicting interests merge. And, with the aid of both counsel and judge, an accused is protected from improvident or involuntary agreements.

"Nathaniel Brown admitted his guilt without reservation. He acted on the advice of a competent attorney. His answers to the trial judge's questions show that he acted voluntarily and with understanding of the nature of

the charge and the extent of the possible punishment. If, as appears, the inducement was a reduction in the offense charged, the prosecutor fulfilled his promise. * * * The petitioner made a deliberate and measured choice: he traded his defenses for a lighter charge in the hope of a lighter sentence. And the trial judge satisfied himself, after a careful examination, that Brown understood his plea of guilty and pleaded guilty of his own free will. Brown is bound by his plea."

■ Here, Meyer made a deliberate and measured choice, *i.e.*, he pleaded guilty to one offense in the hope of getting a lighter sentence than if he were tried for two offenses, and he is bound by his plea.

■ Petitioner also relies for reversal on McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed. 418 (1969), where the Court held that the facts did not show that the court had complied with Fed.R.Crim.P. 11, which requires a determination that the guilty plea is truly voluntary and requires additionally the production of a complete record of the factors relevant to the voluntariness at the time the plea is entered. In *McCarthy*, the Court said that in addition to directing the judge to inquire into the defendant's understanding of the nature of the charge and the consequences of his plea, Rule 11 also requires the judge to satisfy himself that there is a factual basis for the plea—that the conduct which the defendant admitted constituted the offense charged in the indictment or information or an offense included therein to which the defendant had pleaded guilty. Petitioner asserts that this was not done here, but we disagree. The judge personally addressed Meyer and inquired whether he understood that he was charged with breaking into a United States Post Office at Webb City, Missouri on October 23, 1964, with intent to commit larceny, and that on his plea of guilty he could be sentenced to

five years in the custody of the Attorney General and fined $1,000.00, to which Meyer replied, "Yes, Your Honor." Meyer is a high school graduate and has been previously convicted of the violation of a number of laws as set out in n. 1. His petitions, which he wrote personally with some assistance, indicate an unusual aptitude, for a layman, in drafting pleadings. With his education and his experience in court proceedings instituted against him, plus the explanation given to him by his attorney, it is inconceivable that he could have misunderstood the offense charged and the consequences of his plea of guilty. Also, we think the recitation of the evidence which the government had against Meyer with regard to his participation in the crime and his criminal record, which was made to the court by the United States District Attorney in Meyer's presence and without his contradiction or objection, and his response to the court's question as to whether the attorney's statement was correct that it sounded "pretty much like it," furnishes a sufficient factual basis for the plea to satisfy the requirements of *McCarthy.* The decision in *McCarthy,* however, was handed down on April 2, 1969, which was subsequent to the defendant's plea, and is not applicable to this case since it is not to be applied retroactively. Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969); Ford v. United States, *supra;* Cantrell v. United States, *supra;* Bennett v. United States, 413 F.2d 237, 242 (7th Cir. 1969). Therefore, petitioner's reliance upon *McCarthy* is misplaced. United States v. Brown, 413 F.2d 878, 880 (9th Cir. 1969).

After discussing the *McCarthy* decision in the *Cantrell* case, *supra,* we said (413 F.2d at 632): "It is still the law that a plea of guilty, knowingly and understandably made, waives all non-jurisdictional defects and defenses and equates with an admission of guilt. (Citing cases.)" To the same effect see Ford v. United States, *supra,* and cases there cited.

In Robins v. United States, 413 F.2d 1290 (7th Cir. 1969), the Seventh Circuit held that the district court satisfied the requirements of Rule 11 in accepting defendant's guilty plea where he had the benefit of consultation with his lawyer, notice as to the possible maximum penalty, and where the court, after observing his demeanor, concluded that his plea was voluntary.

The district court treated Meyer's petition as a petition under 18 U.S.C., Rule 32(d), Fed.R.Crim.P., to withdraw his guilty plea rather than one under 28 U.S.C. § 2255 attacking the sentence. Even though it is termed a § 2255 motion, petitioner may assert therein a right recognized by Rule 32(a). United States v. Behrens, 375 U.S. 162, 164–165, 84 S.Ct. 295, 11 L. Ed.2d 224 (1963). And since the other relief which Meyer requested would necessarily have been granted if he were allowed to withdraw his guilty plea, his petition may be properly considered as a motion under Rule 32(d). United States v. Kent, 397 F.2d 446, 448 (7th Cir. 1968). The fact is that if a prisoner is entitled to the relief he prays for, it will be granted irrespective of the designation of the petition. United States v. Kent, supra.

Under Rule 32(d), a defendant has no right to withdraw his plea of guilty after sentence unless he has shown that a manifest injustice would result if such were not permitted.[4] Sullivan v. United States, 348 U.S. 170, 174–175, 75 S.Ct. 182, 99 L.Ed. 210 (1954); Davenport v. United States, 122 U.S.App.D.C. 334, 353 F.2d 882, 885 (1965); Smith v. United States, 116 U.S.App.D.C. 404, 324 F.2d 436, 441 (D.C.Cir.1963), cert. denied, 376 U.S. 957, 84 S.Ct. 978, 11 L. Ed.2d 975 (1964).

In the Sullivan case, supra, 348 U.S. at 174–175, petitioner charged that he was induced to enter a plea of guilty by the statements of the government attorney, which led him to the mistaken belief that he would be placed on probation, but the Supreme Court held that the United States Attorney's statements were factual and fair and that petitioner had failed to show any "manifest injustice." In the Davenport case, supra, 353 F.2d at 885, it was held that no manifest injustice was shown where defendant was not told prior to entering a plea of guilty to a charge of assault with a deadly weapon that he could be charged with murder if the victim died within a year and a day as a result of the injury. In the Smith case, supra, 324 F.2d at 441, it was held that the failure of counsel to advise the defendant that he would not be eligible for parole and counsel's inference that he might be granted probation, which did not materialize, did not constitute manifest injustice which would entitle him to withdraw the plea of guilty.

The manifest injustice standard for allowing withdrawal of a guilty plea under Rule 32(d) provides the district court with greater latitude or leeway than the standard under 28 U.S.C. § 2255 relating to vacation of judgment and sentence. United States v. Kent, supra, 397 F.2d at 448. The good faith, credibility and weight of a defendant's assertions and those made on his behalf in support of a motion under Rule 32(d) are issues for the trial court to decide. United States v. Washington, 341 F.2d 277, 281 (10th Cir. 1965), cert. denied, 382 U.S. 850, 86 S. Ct. 96, 15 L.Ed.2d 89 (1965); United States v. Nigro, 262 F.2d 783, 787 (3rd Cir. 1959).

In Oksanen v. United States, 362 F.2d 74, 78 (8th Cir. 1966), this court said:

"The showing of 'manifest injustice' as required by Rule 32(d) is directed

---

4. Rule 32(d), Fed.R.Crim.P., 18 U.S.C., provides:

"A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed of imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

solely at the setting aside of the judgment of conviction. Once the procedural bar of the oustanding judgment has been properly removed, as here by a showing of a lack of counsel at sentencing, the decision of whether the prior guilty plea may be withdrawn is addressed to the sound discretion of the trial court. 'Manifest injustice' plays no part in this decision. (Citing cases.)"

The burden of proof of manifest injustice is on the petitioner and the determination of this issue is within the sound discretion of the district court and will not be interfered with on appeal in the absence of abuse of discretion. Ford v. United States, *supra*; United States ex rel. Rosa v. Follette, *supra*, 395 F.2d at 726; Miles v. United States, 385 F.2d 541, 543 (10th Cir. 1967); Callaway v. United States, 367 F.2d 140, 142 (10th Cir. 1966).

We hold that there is abundant evidence to support the district court's finding that Meyer's guilty plea was voluntarily and understandingly made after he had been properly advised of his rights and the consequences of his plea, and that the district court did not abuse its discretion in refusing to permit him to withdraw it.

Neither is there any merit to Meyer's contention that he was prejudiced because he did not have counsel at the time he signed the consent to plead guilty and because counsel subsequently appointed did not render effective legal assistance. Of course, the right of a criminal defendant to counsel throughout all critical stages of the proceedings against him is undisputed. Rule 44(a), Fed.R.Crim.P., 18 U.S.C.; Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L. Ed.2d 33 (1967); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). However, the record shows that defendant here had adequate representation at all critical stages.

A private attorney in St. Louis, Mr. Godfrey, represented Meyer on the previously dismissed conspiracy charge relating to the conspiracy to rob post offices and dispose of stolen stamps and money orders, and Meyer contacted him concerning the complaint on the present charges when he was informed of it by Mr. R. R. Cullom, a postal inspector in St. Louis. Cullom testified that he first talked with Meyer by telephone and told him he had a message from Kansas City relative to certain court proceedings which might be instituted there and asked him to come to his office to discuss the matter. Meyer says Cullom read him a message which he had received from Mr. Ruddell, a postal inspector in Kansas City, about his conversation with the District Attorney's office with regard to Meyer's involvement in the Webb City burglary. Meyer then asked if it would be all right for his lawyer to come with him and Mr. Cullom said yes, it would, and an appointment was made for the following day. Neither Meyer nor his attorney made an appearance by 2:00 o'clock the next afternoon, however, and Cullom called the attorney, Mr. Godfrey, and asked him if he were coming. He said that he had an appointment with Mr. Meyer at 9:00 a. m. but Meyer did not show up and he was withdrawing from representing him. Meyer's failure to keep the appointment with his private attorney indicates that he did not want counsel at that time and his actions are in accord with what he told Mr. Mendelson later that he was hoping the judge would accept his plea of guilty when he appeared without counsel so that he could use that as a ground for getting the conviction and sentence set aside. His scheme was thwarted, however, when the court refused to accept his plea but instead appointed counsel to represent him and continued the case to a later date.

A case directly in point with the present case on this issue is Nanney v. United States, 301 F.2d 57 (10th Cir. 1962). In that case the accused did not

have an attorney when he signed a consent to have his case transferred from one district court to another for the purpose of pleading guilty under 18 U.S.C., Fed.R.Crim.P. 20. Several months after imposition of sentence and after he had commenced serving his term at Leavenworth, he filed a *pro se* motion to withdraw his guilty plea under Rule 32(d), Fed.R.Crim.P., asserting that "the consent to the transfer of the case was invalid for the reason that at the time of its execution appellant did not have the assistance of an attorney." In answer to this contention, the court said (301 F.2d at 58):

> "Of course, an accused is entitled to the aid of counsel throughout the trial proceedings. But it is not essential to the validity of a consent to transfer under Rule 20 that it be signed in open court. (Citing cases.) And such consent is not such an integrated part of the judicial proceedings that giving it without the aid of counsel in connection therewith constitutes a deprivation of any right protected by the Constitution which renders invalid subsequent proceedings in the court to which the case is transferred."

Nanney further challenged the entry of the plea of guilty on the ground that he had suffered manifest injustice when his plea was entered because he was under the misapprehension that by signing the consent to the transfer of the case he waived his right to plead not guilty, to plead *nolo contendere*, or to proceed otherwise than plead guilty. The court noted that appellant was not a stranger to the courts and court proceedings; that he was twenty-four years of age at the time of entering the plea and that he had been in and out of jails since he was fifteen; that he made known his desire to have the case transferred to the court in Kansas for the purpose of pleading guilty; that he read the consent, said he understood it, and signed it; that it was apparent that at the time appellant entered his plea of guilty he did not desire to exercise the right to plead not guilty or *nolo contendere*, or to have the case transferred back to Georgia for further proceedings; that he did not desire to proceed in any other way than to enter the plea of guilty; and that "the denial of the motion to withdraw the plea in these circumstances did not constitute an injustice which entitled appellant to have the judgment and sentence vacated in order that he might withdraw such plea." (301 F.2d at 59.) Certainly, the same is true here.

In United States ex rel. Bennett v. Myers, 381 F.2d 814, 817 (3rd Cir. 1967), the court held that if there were any impropriety in an earlier proceeding in which the defendant appeared before the trial judge without counsel, the defendant waived it when he entered his plea of guilty voluntarily and with the advice of counsel.

In United States ex rel. Maisenhelder v. Rundle, 349 F.2d 592 (3rd Cir. 1965), the court held that a plea of guilty by the defendant at a preliminary hearing when he was without counsel did not result in prejudice where later, with the assistance of counsel, he entered a voluntary plea of guilty, stating at page 595 that "a voluntary and intentional plea of guilty on the advice of counsel constitutes a waiver to any objection of prior proceedings which may also include violation of defendant's rights," citing United States v. French, 274 F.2d 297 (7th Cir. 1960); and United States v. Kniess, 264 F.2d 353 (7th Cir. 1959).[5]

 It appears to us that defendant in this case was not without counsel at any critical stage of the proceedings and that appointed counsel adequately advised him of his rights. A defendant is not guaranteed "effective" counsel, if, to be effective, his attorney must free him. The Sixth Amendment does not require for its satisfaction that the actions of counsel result in a favorable outcome. Kress v. United States, 411 F.2d 16, 22 (8th Cir. 1969); Evans v. United States, 346 F.2d 512, 514 (8th

5. See n.3.

Cir. 1965); Taylor v. United States, 282 F.2d 16, 20 (8th Cir. 1960).

The judgment of the district court is affirmed.

LAY, Circuit Judge (dissenting):

I respectfully dissent. On the basis of this record, a finding that petitioner's plea of guilty was voluntarily made is, in my opinion, clearly erroneous. I think the clear weight of the evidence requires us to hold that petitioner's plea of guilty was involuntarily made.[1] I likewise feel that the judgment and sentence should be vacated because the government failed to disclose to the district court, at the time the plea was taken, that it had negotiated the plea with the defendant-petitioner.

## I. THE FACTUAL SETTING

I cannot agree with my brothers, constituting the majority of this panel, that a promise or threat made by the government to an accused to induce a plea of guilty must be either in the form of a misrepresentation of fact or law, or otherwise be illegal, in order to set aside the plea of guilty as involuntarily made. The issue is not whether the inducement or promise made by the government was improper or carried out, but whether the inducement or promise was the sole basis of the defendant's decision to plead guilty, rather than the defendant's desire to admit his guilt-in-fact of the crime charged. The governing law in the determination of the voluntariness of a guilty plea is succinctly summarized in Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962): "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." This principle was recognized as the law of this Circuit before *Machibroda* was decided. Judge Van Pelt recog-

nized in Shupe v. Sigler, 230 F.Supp. 601 (D.Neb. 1964), that this Circuit in Heideman v. United States, 281 F.2d 805 (8 Cir. 1960),

> " * * * held that coercion sufficient to set aside the plea of guilty could result from conduct of a prosecuting attorney, and that allegations that a prosecutor declared his intention of treating an offense severely but offering a five year sentence with the assurance that the recommendation of the prosecutor would prevail in the event a plea was entered, if proven, present facts from which 'it can be fairly inferred that pressure by threat and enticement were improperly brought to bear upon the defendants and their pleas were not voluntary.' " 230 F.Supp. at 605–606.

I find myself in full concurrence with the viewpoint of Judges Rives and Brown in their dissent in the rehearing of Shelton v. United States, 246 F.2d 571 (5 Cir. 1957) rev'd on confession of error, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed. 2d 579 (1958), where they observed:

> "The vice is not that a misrepresentation was made and because of that the bargain may be rescinded. The vice is that because of that *representation* the accused was led to announce his guilty plea. * * * The question is not: Was a promise made, and if so, was it kept? Rather it is: Was the promise as made and kept the real motivating cause for the plea? If it was, then, like one induced by the third degree or the making of false and untrue representations, it cannot stand." 246 F.2d at 579–580.

The facts which lead me to dissent are uncontradicted in the record and may be briefly stated.

1. The petitioner and his wife lived in St. Louis, Missouri. On February 12,

---

1. The ultimate determination of voluntariness of a guilty plea is generally one of fact, left up to the trier of fact; his resolution being based on the totality of circumstances. The petitioner carries the burden of proof to establish involuntariness by a preponderance of the evidence. Ford v. United States, 418 F.2d 855, 859 (8 Cir. 1969). A reviewing court should reverse a lower court holding only if it is "clearly erroneous."

1968, the petitioner appeared in Kansas City, at the direction of his retained counsel, Mr. Godfrey of St. Louis, and was informed that the existing indictment for conspiracy to burglarize post offices and fence stolen stamps had been dismissed on February 9, 1968.[2] This information was told to him by William L. Rudell, Postal Inspector in Kansas City. Also present was Postal Inspector Thorn. Meyer's counsel was not present. The government then obtained Meyer's signature to a "waiver of rights" form, wherein he waived his right to have counsel present at the interview. Rudell told Meyer that the government planned to indict him for both the burglary of the Webb City, Missouri, Post Office which occurred in October 1964, and for destruction of the government property damaged at the time. Rudell, however, told Meyer if he would be willing to consent to the filing of an information on just one charge, the United States Attorney would possibly agree to that. *Meyer refused to do so at that time.*

2. Following this interview with Meyer, Rudell thought the United States Attorney's office in Kansas City would proceed with the indictment. However, Bruce Houdek, the Assistant United States Attorney wanted Meyer interviewed once more by the Postal Inspectors to again attempt to obtain Meyer's consent to allow the government to proceed by information and to have Meyer enter a guilty plea. According to a written report of February 28, 1968, sent to the Postal Inspector in charge in St. Louis, Missouri, Rudell left little doubt as to Houdek's desires:

"Mr. Houdek stated that when interviewed, Meyer should be informed

that it is Mr. Houdek's intention, now that the conspiracy case has been dismissed, to indict Meyer in connection with the burglary of the Webb City post office which occurred on the night of October 23, 1964. Two counts would be filed: one charging damage to Government property in excess of $100 (carrying a possible sentence of 10 years), and one charging post office burglary (carrying a possible sentence of five years). However, if Meyer wished to consent to prosecution by information and enter a plea of guilty, thus saving the Government considerable time and expense, Mr. Houdek would be willing to charge only the post office burglary, with a possible five year maximum sentence." [Tr. 48; Petitioner's Exhibit B]

3. On February 29, R. R. Cullom, the Postal Inspector in St. Louis, called on Mrs. Meyer and asked Mrs. Meyer to have petitioner call him. Meyer returned the call. Although Meyer testified that Cullom read over the phone what Houdek had stated, Cullom doubted that he did but could not recall one way or the other. In any event, a personal interview was set up for March 7, 1968. Meyer again appeared without counsel. At this meeting, another waiver of rights was signed by Meyer (Government's Exhibit I), *but this time Cullom had typed, at the bottom of the form, Rudell's exact statement (reprinted above) as what the Assistant United States Attorney promised ("would be willing") to do if Meyer would plead guilty to the burglary alone.* Cullom said that although he did not specifically point out the words on the bottom of the form, *Meyer was free to read it.* Cullom, however, then read to Meyer this

2. Under the conspiracy indictment, it is not of little significance in viewing the totality of all the facts that twenty defendants were originally charged in the indictment and eighteen of them were convicted either by trial or guilty pleas. Approximately one year later, the indictment was dismissed against two defendants, Meyer being one of them. Mr.

Houdek, the Assistant United States Attorney for the Western District of Missouri, testified that he dismissed the conspiracy charge because Meyer's complicity in the conspiracy was "very small" and that it would not be "at all reasonable or competent to go ahead" on the conspiracy trial. This indictment had been pending since March 1967. Record 86.

same statement of Houdek from the February 29, 1968, report from Rudell and discussed it with him. Cullom said that Meyer appeared to be worried and fretting over the indictment and the possibility of a heavy penal sentence. *However, after much discussion, once again Meyer refused to consent to the filing of the information and plead guilty "in accordance with the message from Kansas City."*

4. Still not satisfied with their unsuccessful attempts in obtaining the guilty plea, one or two days later, Cullom again contacted Mrs. Meyer and asked to have Meyer contact him. Once again Meyer called back and Cullom asked whether he had made a decision on what he should inform the Kansas City people. This time Meyer said he had decided that it was in his best interest to plead guilty.

5. On April 2, 1968, after his arrest and the filing of the information, Meyer signed the Rule 20 transfer and consented to waive indictment and plead guilty in St. Louis. On April 12, 1968, Judge Meredith appointed attorney Tom Mendelson as counsel for petitioner.

6. One or two days preceding the date for the plea, Mr. Mendelson interviewed Meyer for the first time. Mendelson's testimony at the evidentiary hearing was not contradicted. Mendelson stated upon his interviewing petitioner that Meyer told him that he had not committed the crime. *However, Meyer said he desired to enter a plea of guilty on the charge contained in the information, because if he did not, the government had told him that he would then face a charge in the Western District of Missouri involving a 15-year maximum sentence.* Mr. Mendelson then told the petitioner the choice was up to him, that if he was an innocent man he would have the opportunity to establish his innocence by pleading not guilty. However, he told Meyer if he went before the court he would have to announce to the court that he was making a voluntary plea. Mendelson told petitioner to think it over. A day or two later, on April 19, the date set for taking the plea, Meyer told Mendelson it was his intention to go ahead and enter a plea of guilty. Mendelson said at the time of the plea that

> "it was not my intention at that time to upset any proceeding that my client whom I had been appointed to represent intended."[3]

## II. THE INADEQUACY OF THE GUILTY PLEA RECORD

The district court's finding that Meyer's plea was voluntary is basically premised on the April 19, 1968, record of inquiry conducted by the trial court at the time of the plea. At the time of his plea of guilty, Judge Meredith asked petitioner whether he was guilty of the offense charged and Meyer said, "Yes." Judge Meredith asked whether the plea was induced by any threats or promises. Meyer answered, "No."

On this record, it remains uncontradicted that Meyer's answer was not truthful.[4] What if Meyer or his law-

---

3. The testimony of Attorney Mendelson reflects the totality of his representation for the petitioner. In view of my findings I need not pass upon the question whether or not such constitutes "effective representation."

4. It is obvious why Meyer did not wish to disclose to the court what the government had told him. Mendelson had properly told him that if he was going to plead he must tell the court that his plea was voluntary. It would have been against Meyer's own self-defined interest to do anything to wreck the choice he had decided to make. Of course, this realization is present in any situation where a defendant has decided to accept the lesser of two possible punishments and to make a plea of guilty irrespective of whether he is guilty in fact.

> "Notwithstanding the fact that the plea has been the subject of negotiation, the defendant usually answers in the negative, and the prosecutor and defense counsel seldom indicate to the contrary." American Bar Association Project on Minimum Standards For

yer (with Meyer's permission) had revealed to the trial court Meyer's previous statement to his attorney about his innocence, and that his reason for pleading guilty to the lesser charge was because the government had assured him if he did not enter a plea of guilty, they would proceed by indictment on offenses carrying a harsher penalty. Under these circumstances, it becomes rhetorical to ask, would the court have taken the plea? See McCoy v. United States, 124 U.S.App.D.C. 177, 363 F.2d 306 (1966); cf. Griffin v. United States, 405 F.2d 1378 (1968).

To ask this question, one does not have to assess the credibility of Meyer's claim of innocence. Petitioner's conduct here is not a claim belatedly conjured up by a prisoner to merely give substance to post-conviction proceedings.[5] All evidence of the events leading up to his plea corroborate petitioner's claim of involuntariness. There exists no reason to doubt attorney Mendelson's credibility and his candid statement as to what Meyer told him before he made his plea Mendelson's uncontradicted statement corroborates petitioner's alleged state of mind before he made his plea. Bailey v. MacDougall, 392 F.2d 155, 159–160 (4 Cir. 1968); United States v. LaVallee, 319 F.2d 308 (2 Cir. 1963); United States v. Mancusi, 275 F.Supp. 508 (E.D.N.Y. 1967); United States v. Tateo, 214 F.Supp. 560 (S.D.N.Y. 1963). To the extent that such negotiations or promises, legitimately made or not, remain undisclosed to the trial court, the record of April 19, 1968, was wholly inadequate to determine whether or not the plea was voluntarily entered. This very realization lies behind the ABA's recommended standard, § 1.5, which was issued in February 1967, one year before Meyer's plea was taken. Section 1.5 reads:

"The court should not accept a plea of guilty or nolo contendere without first determining that the plea is voluntary. By inquiry of the prosecuting attorney and defense counsel, the court should determine whether the tendered plea is the result of prior plea discussions and a plea agreement, and, if it is, what agreement has been reached."[6] Pleas of Guilty, supra.

---

Criminal Justice, Pleas of Guilty § 3.1 (a) p. 61 (Approved Draft 1968) (hereinafter Pleas of Guilty.
And see Newman, Conviction, The Determination of Guilt or Innocence Without Trial 83 (1966) (hereinafter cited Newman).

"The following questions were asked of a defendant after he had pleaded guilty to unarmed robbery when the original charge was armed robbery. This reduction is common, and the judge was fully aware that the plea was negotiated:
*Judge:* You want to plead guilty to robbery unarmed?
*Defendant:* Yes, Sir.
*Judge:* Your plea of guilty is free and voluntary?
*Defendant:* Yes, Sir.
*Judge:* No one has promised you anything?
*Defendant:* No.
*Judge:* No one has induced you to plead guilty?
*Defendant:* No.
*Judge:* You're pleading guilty because you are guilty?

*Defendant:* Yes.
*Judge:* I'll accept your plea of guilty to robbery unarmed and refer it to the probation department for a report and for sentencing December 28.
This is a routine procedure designed to satisfy the statutory requirement and is not intended to disguise the process of charge reduction. If the defendant's plea is trustworthy and freely given, the fact that he pleads guilty to a less serious crime than his conduct might indicate does not ordinarily put the matter of his guilt in doubt. *The question and answer sequence, however, is not likely to effectively satisfy the court that there is a factual basis for the plea."* (My emphasis.)

5. In this regard it is significant that the sentence was handed down on April 19, 1968. The motion to vacate sentence was filed by petitioner approximately two months later, on June 24, 1968. Compare United States v. Mancusi, 275 F.Supp. 508 at 519.

6. If we are willing to accept the obvious evils of plea bargaining (A. Blumberg,

The trial court's knowledge of the existence of "plea bargaining" was essential to any searching inquiry of voluntariness to make certain that Meyer's present plea was *in fact* based upon his actual guilt of the crime charged and not alone induced by the government's promise. Especially is this so when the government is dealing with a defendant with a prior criminal record, who feels he is a "loser" whichever way he turns, irrespective of his actual guilt of the crime to be charged.[7] Perhaps Meyer was not telling the truth to his attorney; perhaps, the only reason for pleading guilty was because he was in fact guilty. However, for the trial court to adequately determine this fact, it would have been essential to consider the plea in the context of the actual inducement made to Meyer by the government agents on behalf of the office of the United States District Attorney.

The government here asserts, and the majority seemingly endorses its view, that the facts here do not constitute "plea bargaining" since the negotiations with Meyer occurred *prior* to the time that he was actually charged with the crime. Under the facts here, the timing of the original government offer following the dismissal of the long standing conspiracy charge, the immediate "detainer" orally conveyed by the Postal Inspector because of further charges, the conveniently placed, typed communication added to the March 7 waiver form containing the United States Attorney's statement as to what the government would do if no plea of guilty was given, and the continued pursuit by the government agents to obtain the plea despite Meyer's unwillingness to succumb, this argument seems trifling to me. *The voluntariness of the plea is still the issue regardless of when the inducement is offered.* To say there was no inducement made here is to ignore the uncontradicted evidence of the government itself.

It might be urged that although the negotiations were not disclosed to the trial court at the time of the plea, the same trial judge nevertheless has now weighed this inducement in light of the post-conviction hearing and has now determined that nevertheless the plea was voluntary. There are two fundamental gaps in this reasoning: (1) the trial court, as does the majority of this panel, erroneously interprets the defendant's April 19 statement to be a plea-in-fact,[8] and (2) the post-conviction finding of

---

Criminal Justice (1967); Newman, supra; A. Alschuler, The Prosecutor's Role in Plea Bargaining, 36 U.Chi.L.Rev. 50 (1968)) as being balanced by the overall requirements made allegedly necessary for the effective administration of criminal law (Morris, Are Courts Too Soft on Criminals, 53 J.Am.Jud.Soc'y Jan.1970, at 231), then courts at the very minimum, should require full disclosure of the "bargain" in order to objectively assess the voluntary quality of the plea itself.

7. "It might be responded that although the guilty plea system circumvents the safeguards ordinarily associated with criminal prosecutions, it supplies others of its own. A plea of guilty is, of course, the defendant's act, and defenders of the system maintain that men do not falsely convict themselves. In effect, these defenders would permit situations in which it is to the apparent advantage of innocent men to plead guilty, and they would then insist that nothing of the sort could occur. This argument seems to depend, not on reason, but on mysticism. *Some secret force will*

*presumably hold every defendant back, despite the fact that the concessions he was offered were deliberately calculated to overbalance his chances for acquittal."* (My emphasis.) A. Alschuler, The Prosecutor's Role in Plea Bargaining, 36 U. Chi.L.Rev. 50, 64–5 n. 43 (1968).

8. At the guilty plea hearing before Judge Meredith on April 19, the government attorney read from a report of the defendant's alleged involvement in the crime charged. The defendant made no response and no questions were propounded to him. Then the government read a detailed history of defendant's criminal record. Following this, the court said: "Mr. Meyer, is that a correct statement of *your past criminal record?*" (My emphasis.) Meyer answered: "It sounds pretty much like it, Your Honor." Record of April 19 Proceedings, at p. 6. I cannot agree that this constituted a plea-in-fact as to the crime charged. In contrast compare the factual plea in Ford v. United States, 418 F.2d 855 (8 Cir. 1969).

voluntariness is erroneously based on the transcript of proceedings of April 19, 1968. The record of these proceedings, however, as we have discussed, was incomplete. The record demonstrates that Judge Meredith did not know of any plea negotiations at the time of Meyer's plea. The record is clear that Meyer or his attorney were not about to tell him. As will be discussed later, the government did not volunteer this information. Under these circumstances, I feel it is error, in this § 2255 proceeding, to rely upon the record of the April 19, 1968, plea proceeding, as did the district court and the majority herein. Cf. Sigler v. Parker, 396 U.S. 482, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970). This record does not in any way refute the evidence that petitioner's plea of guilty was in fact induced by the government's conduct. Viewing the totality of the evidence, it is difficult for me to reason that the petitioner's plea of guilty was voluntarily made. It is also difficult to imagine circumstances which were more (to use Judge Weinstein's apt appraisal) "calculated to overwhelm the ability of persons such as defendant to decide rationally whether to stand trial or plead guilty. * * * " [9]

### III. THE GOVERNMENT'S NONDISCLOSURE OF THE PLEA NEGOTIATIONS.

There is, for me, another equally persuasive reason why the April 19, 1968, plea of guilty should be vacated. When the defendant told the trial court that no promises or threats had been made to him, the government stood mute before the court and countenanced Meyer's false reply. If in fact the defendant's plea was because he believed he was in fact guilty, the government had nothing to hide or lose by revealing their prior plea negotiations to the court. Once these facts had been revealed to the dis-

trict court there would have followed the necessary searching inquiry on the record to make certain that a voluntary plea of guilty-in-fact was being entered. Such inquiry did not take place here simply because the court was never told the facts of negotiation surrounding the plea.

Here a defendant, who is supposedly voluntarily pleading guilty on lesser charges, falsifies a statement that no inducement or promises have been made to him by the government. I assume arguendo that the trial court's plea inquiry of April 19 met both the standards of McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166 (1969) and pre-*McCarthy* requirements under old Rule 11. However, where such inquiry of the defendant results in a response that no promises or threats have been made to induce the plea of guilty, and the government stands silently by with full knowledge that the defendant's response is false, the gravamen of this omission far exceeds any violations of Rule 11 or the *McCarthy* decision. Under such circumstances, the nondisclosure has in effect been a fraud upon the court.[10] When a defendant pleads guilty to a charged crime there is more at stake than the time and expenses of the government. In addition to the possible violation of defendant's basic rights, there also may very well be involved in this prosecutorial misconduct, a serious breach of the public interest. Relying upon the ABA Canons of Professional Ethics, the commentator in the oft-cited article in 112 Pa.L.Rev. 865, 886 (1964), observes:

"But a prosecutor should not include additional charges merely to bring pressure on a defendant to plead guilty.

"In many situations it may be difficult even for a cautious trial judge to determine if the prosecutor's practice

---

9. United States v. Mancusi, 275 F.Supp. 508 at 515.

10. "No fraud is more odious than an attempt to subvert the administration of

justice." Hazel-Atlas Glass Co. v. Hartford Co., 322 U.S. 238, 251, 64 S.Ct. 997, 1004 (1944) (Roberts, J. dissenting).

was designed to have, or actually had, a coercive influence on the defendant. This is especially true since the defendant is attempting to have his plea accepted and is not alleging any coercive influence. The plea proceeding is basically nonadversary; the prosecutor is attempting to have the case disposed of by plea and the defendant is trying to have his plea accepted. At this point of time the interests of the parties merge. This complicates the court's obligation to determine whether the plea is voluntarily and understandingly made. Therefore, whenever a plea agreement has been entered into or merely discussed with a defendant or his counsel, the prosecutor *has an ethical obligation to inform the court* of such action in order to facilitate the court's examination." (My emphasis.)

I see little difference with this situation and one where the prosecutor acquiesces in false testimony;[11] or knowingly uses fraudulent evidence;[12] or fails to disclose exculpatory evidence to defense counsel.[13]

Greater precaution is needed where the "plea bargain" is not disclosed by the government, than in any of the above circumstances. In a proceeding where a guilty plea is taken, the entire trial process is short circuited. The hearing is nonadversary in nature and the defendant is fully conceding the government's case. The concealment of the "plea bargain" is basically offensive to the court's objective determination of the issue of voluntariness.[14]

11. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

12. Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967).

13. Giles v. Maryland, 386 U.S. 66, 87 S. Ct. 793, 17 L.Ed.2d 737 (1967) and Alcorta v. Texas, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957).

14. The following is an editorial dated March 27, 1970, from the Omaha World-Herald. It is entitled: "Justice by Arrangement," and reads:

"It isn't as bad as it sounds, but the important aspects of many criminal cases are decided behind closed doors, without the knowledge of judges or juries and without formal sanction in law.

"We refer to the practice of plea bargaining, which recently has engaged the attention of the Nebraska District Judges Association.

"In plea bargaining, the prosecution tries to get a defendant to plead guilty to a reduced charge. The benefits to the prosecutor are an assured conviction and the sav-of the time, expense and uncertainty of a jury trial. The benefits to the defendant are the lesser stigma attached to a reduced charge and the chance of a lighter sentence.

"Prosecutors generally are reluctant to talk about this process. It doesn't fit too well with the general conception of courtroom justice, and to many it has connotations of codding criminals.

"Judges know it goes on, but they remain necessarily aloof from the process.

District Judge John Burke of Omaha has said:

"'We've always had it. Every man cannot have a jury trial in every case. It's as simple as that. There just wouldn't be enough judges and prosecutors in the country to handle matters if every charge filed had to be tried before a jury.'

"A balance must be struck so that defendants are not given lighter sentences than they deserve, on charges irrelevant to the offense committed. Plea bargaining becomes harmful to the public interest when the prosecution gets too eager to offer lower charges and starts letting people off too easily. This can happen because the prosecutor is lazy and wants to avoid taking cases to trial, or for a more sinister reason— because he is corrupt and can be had by the defense. Neither sympton is unknown to legal pathology.

"Douglas County officials seem to have handled plea bargaining responsibly and carefully. Considering that the process is so susceptible to abuse, the community is fortunate to have a strong local court system."

This editorial points up a community's concern over plea bargaining. I, for one, do not feel a generalized placement of trust in public officials gives confidence for "clandestine" justice in any individual case. Full disclosure of any "arrangement" should be a prerequisite to any judicial proceeding where a plea of guilty is entered.

I would remand, with directions that the plea of guilty be allowed to be withdrawn, and the petitioner plead anew to the charges within the information.