Eugene Salvatore LUPO, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20275.

United States Court of Appeals, Eighth Circuit.

Dec. 11, 1970.

Eugene S. Lupo, pro se.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., on brief for appellee.

Before MATTHES, Chief Judge, HEANEY, Circuit Judge, and VAN PELT, Senior District Judge.

VAN PELT, Senior District Judge.

Petitioner-appellant seeks relief under 28 U.S.C.A. § 2255 from a five year sentence imposed following his plea of guilty entered May 9, 1968, to an indictment charging him with interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C.A. § 2312.[1] No appeal was taken. A motion to vacate and set aside petitioner's sentence was filed on January 2, 1970. It was denied without a hearing on the ground that the petition was frivolous and without merit as shown by the files and records of the case. This appeal followed. We affirm.

Petitioner alleges that the district court erred in denying his motion without an evidentiary hearing, asserting three factual issues exist which are not discoverable from the files and records in his case. Specifically, petitioner asserts that (1) he was denied effective assistance of counsel, (2) his guilty plea was not accepted in compliance with Rule 11, Fed.R.Crim.P., and (3) that his guilty plea was coerced by promises that pending state charges would be dismissed if petitioner entered a plea of guilty to the federal charge. Addition-

---

1. "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

ally, petitioner contends it was error to deny him an evidentiary hearing to determine what occurred at his sentencing, since the transcript of that proceeding has been lost.

28 U.S.C.A. § 2255 provides:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

\* \* \* \* \* \*

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. \* \* \*

A court may entertain and determine such motion without requiring the production of the prisoner at the hearing. \* \* \*"

The teachings of Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L. Ed.2d 473 (1962) must be examined in determining the correctness of the trial court's ruling. The district court, in *Machibroda*, had made findings of controverted fact issues without notice to petitioner and without a hearing. The Supreme Court held that the case was one in which the motions and files did not conclusively show that petitioner was not entitled to relief. It stated:

"What has been said is not to imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner. \* \* \* Whether the petition in the present case can appropriately be disposed of without the presence of the petitioner at the hearing is a question to be resolved in the further proceedings in the District Court.

"There will always be marginal cases, and this case is not far from the line. But the specific and detailed factual assertions of the petitioner, while improbable, cannot at this juncture be said to be incredible. If the allegations are true, the petitioner is clearly entitled to relief." *Id.* at 495–496, 82 S.Ct. at 514 (footnote omitted)

Our inquiry, therefore, is whether, on the record and files of this case, petitioner is entitled to any relief.

### I—Effective Assistance of Counsel

■ The transcript of the arraignment proceedings indicates, and the government concedes, that petitioner's counsel was not actually appointed until immediately prior to the entry of the guilty plea in open court.[2] Petitioner asserts he did not have an opportunity

---

2. The government asserts that petitioner conferred with counsel on three occasions prior to arraignment, but that counsel was not officially appointed until just prior to the entry of the guilty plea. The government attributes this delay to the lack of a poverty affidavit on file by petitioner. Petitioner, on the other hand, insists he consulted with counsel on only one occasion prior to the entry of the guilty plea, which was for a period of about five minutes. The other two conferences to which the government makes reference occurred after arraignment, and would obviously have no bearing on the voluntariness of the plea.

to consult with counsel after his appointment. Because of its importance, we quote at length from the transcript:

MR. VROOMAN: At this time, Your Honor, the government moves the arraignment of Eugene Salvatore Lupo.

THE COURT: Is that your full, true and correct name?

DEFENDANT: Yes, it is.

THE COURT: Q. Where do you live?

A. Allenton, Massachusetts.

Q. How old are you?

A. Thirty-two.

Q. What is your education?

A. Seventh grade.

Q. Are you married?

A. Yes, sir.

Q. Have any children?

A. Uh, huh.

THE COURT: I will say to you that you are warned and advised that you have a right to remain silent, and that anything you say can be used against you in a court of law; that you have the right to the presence of an attorney at these proceedings and throughout all other proceedings against you at this time. You are also instructed that if you cannot afford an attorney, the government will appoint one for you at its expense. You are also instructed that you have the right to a jury trial.

Now, the maximum penalty—

MR. VROOMAN: It's a Dyer Act charge, Your Honor, $5,000, five years, or both.

THE COURT: The maximum penalty in this case is $5,000, five years or both. Now, do you understand these charges, and these proceedings?

DEFENDANT: Uh, huh.

THE COURT: Do you have an attorney appointed for you?

MR. BROWN: I haven't been appointed yet, Your Honor.

THE COURT: In order to have him officially appointed, it is necessary for you to take an oath as to your own finances. Do you have money with which to hire one?

DEFENDANT: No, I don't.

THE COURT: Q. Is your wife here in the city?

A. That's a little mixed up—no she isn't.

Q. You have two children, are those your children?

A. One of them is.

THE COURT: All right, you maybe (sic) sworn for purposes of appointment of an attorney.

(Statement duly executed and filed)

THE COURT: This is a sworn statement, Mr. Lupo, that you're not employed, you're not self-employed, you don't have any weekly wages, you have no cash whatsoever?

DEFENDANT: No, I don't.

THE COURT: You understand this is under oath.

DEFENDANT: Yes.

THE COURT: Under those circumstances given under your sworn statement, I will appoint Mr. Dennis A. Brown as your attorney in this case. Are you ready to proceed at this time, or do you want to consult further in this case?

MR. BROWN: We are ready to proceed, Your Honor.

THE COURT: Very well.

It appears evident from this portion of the transcript that petitioner was attentive, was able to understand the nature of the questions being asked of him by the judge, and that he responded intelligently to those questions.

The essence of petitioner's complaint of ineffective assistance of counsel is that the time between counsel's appointment and the entry of the guilty plea was insufficient to allow for any meaningful consultation and assistance. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), a

similar allegation was raised by a state prisoner in a habeas corpus proceeding, and was likewise rejected by the federal district judge without an evidentiary hearing. In holding that error was not committed, the Supreme Court stated:

"Apparently no one from the Legal Aid Society again conferred with petitioner until a few minutes before the second trial began. The attorney who then appeared to represent petitioner was not Mr. Middleman but Mr. Tamburo, another Legal Aid Society attorney. *No charge is made that Mr. Tamburo was incompetent or inexperienced; rather the claim is that his appearance for petitioner was so belated that he could not have furnished effective legal assistance at the second trial.* Without granting an evidentiary hearing, the District Court rejected petitioner's claim. * * * Unquestionably, the courts should make every effort to effect early appointments of counsel in all cases. But we are not disposed to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel or to hold that, whenever a habeas corpus petition alleges a belated appointment, an evidentiary hearing must be held to determine whether the defendant has been denied his constitutional right to counsel." *Id.* at 53–54, 90 S.Ct. at 1982 (emphasis added).

Similarly, in this case, petitioner makes no allegation that he had incompetent or inexperienced counsel, but points instead to the small amount of time between appointment of counsel and entry of the guilty plea. It is clear from the record that the district court offered to the petitioner an opportunity to consult with his counsel prior to entering his plea, but that this opportunity was declined. The rule in this circuit is well established that "[t]he adequacy of counsel cannot be determined solely on the basis of the amount of time he spent interviewing his client." Kress v. United States, 411 F.2d 16, 22 (8th Cir. 1969).

In any event, it is clear that petitioner's allegation of inadequate representation is immaterial, "except perhaps to the extent that it bears on the issues of voluntariness and understanding." Kress v. United States, *supra* at 22. As this court stated in Cantrell v. United States, 413 F.2d 629 (8th Cir. 1969), "[t]here is nothing here which begins to approach the standard that a claim of inadequacy of representation may be upheld only where it can be said that the proceedings are a mockery and shocking to the conscience of the court." *Id.* at 632. See also Kress v. United States, *supra*; Cardarella v. United States, 375 F.2d 222 (8th Cir. 1967), cert. denied, 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176 (1967).

## II—Compliance with Rule 11

Petitioner claims that he was not informed of his rights and safeguards as required by Rule 11, F.R.Crim.P. He says that the court did not determine whether the plea was made voluntarily and with an understanding of the nature of the charge, and that he (Lupo) did not have a full understanding of the events taking place at the time of the arraignment and sentencing. He relies upon Ford v. United States, 418 F.2d 855 (8th Cir. 1969),[3] which outlines the procedures to be followed by federal courts in accepting guilty pleas under Rule 11 as enunciated by the Supreme Court in McCarthy v. United States, 394

---

3. "1. Under Rule 11, the district judge must 'inquire whether a defendant who pleads guilty understands the nature of the charge against him and whether he is aware of the consequences of his plea.' * * * *

"2. The second requirement of Rule 11 * * * is that the trial judge must make 'the constitutionally required de-termination that the defendant's guilty plea is truly voluntary.' The Rule 'is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination.'" Ford v. United States, 418 F.2d 855, 857 (8th Cir. 1969).

U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). *McCarthy*, however, has only prospective application, Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). Petitioner's plea of guilty was tendered prior to the effective date of *McCarthy*, and that case is, therefore, not determinative of the issues raised here. The pertinent inquiry is whether this record shows substantial compliance with Rule 11. Meyer v. United States, 424 F.2d 1181 (8th Cir. 1970).

■ Rule 11 provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

At the outset it is well to remember that the court need not follow any particular ritual in making its inquiry under Rule 11. Bartlett v. United States, 354 F.2d 745, 751 (8th Cir. 1966), cert. denied, 384 U.S. 945, 86 S.Ct. 1471, 16 L.Ed.2d 542 (1966); Bone v. United States, 351 F.2d 11, 14 (8th Cir. 1965); Smith v. United States, 339 F.2d 519, 527 (8th Cir. 1964); Turner v. United States,

325 F.2d 988, 990 (8th Cir. 1964), cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 308 (1964). See also United States v. Youpee, 419 F.2d 1340 (9th Cir. 1969); Baker v. United States, 404 F.2d 787 (10th Cir. 1968); United States v. Rizzo, 362 F.2d 97 (7th Cir. 1966). The procedure is sufficient so long as rational means are used to ascertain that the defendant understands the proceeding, the charges against him, and the consequences of his plea. Smith v. United States, *supra*; United States v. Youpee, *supra*.[4]

■ The petitioner was told by the court that he could remain silent; that he had a right to have an attorney present, appointed by the court if he could not afford one; and that he had a right to a jury trial. The court informed petitioner of the maximum penalty and inquired of him whether he understood the charges and the proceedings, to which he responded in the affirmative. The indictment was read to petitioner in open court, and copies were furnished to him and to his counsel. At that point petitioner entered his plea of guilty.

In Hinds v. United States, 429 F.2d 1322 (9th Cir. 1970), in answer to petitioner's contention that he was not advised of the consequences of his plea of guilty, the court stated that, because the district court had advised petitioner of the maximum sentences under the charges, he was effectively advised of the consequences of pleading guilty as required by Rule 11. We conclude in this case that the record shows petitioner was similarly advised of the consequences of his guilty plea, and of his rights. We further conclude that the record amply demonstrates that petition-

4. Petitioner relies on the case of Stetson v. United States, 417 F.2d 1250 (7th Cir. 1969), where the court reversed a dismissal of a § 2255 motion on the ground that there had not been compliance with Rule 11. In *Stetson*, however, the only record before the court was a bare docket entry indicating defendant's waiver of information, advising defendant of his rights, and entrance of defendant's plea of guilty.

The reporter's transcript of the hearing was not filed. It is thus apparent that *Stetson* is readily distinguishable from the instant case. The records and files include much more than a mere docket entry. If the missing transcript were of the arraignment proceedings rather than the sentencing proceedings in this case, a different result might be reached.

er knew and understood the nature of the proceedings, that his plea was voluntary and that there was a sufficient factual basis on which the court could find the petitioner guilty. As indicated in *McCarthy, supra,* the pre-sentence report furnishes a sufficient factual basis for a plea of guilty.[5]

### III—The Bargaining

<span style="background:black"></span> Petitioner contends that the F.B.I. agents promised him that a plea of guilty to the federal charge would result in dismissal of the pending state charges arising out of the same series of events leading to his arrest. He claims error in denying an evidentiary hearing since the facts pertaining to this allegation are not conclusively disclosed by the files and record. Accepting this allegation as true for the purpose of this decision, we do not find error in the denial of an evidentiary hearing. It is clear that the practice of plea bargaining does not in and of itself render a guilty plea involuntary. *Meyer v. United States, supra;* Ford v. United States, *supra.* This court's statement in *Meyer* is appropriate here even though an evidentiary hearing was had in *Meyer.*

"In the recent case of Ford v. United States, 418 F.2d 855 (8th Cir. 1969), where the petitioner charged that he had been 'threatened' that if he did not plead guilty to the federal charge against him, he would be turned over to state authorities, Judge Gibson said:

'A threat to prosecute under state law where the facts warrant prosecution should not be considered as coercive or intimidating. To constitute fear and coercion on a plea "Petitioner must show he was subjected to threats or promises of illegitimate action" ; and fear of a greater sentence may induce a valid plea of guilty. (Citation omitted.) The state charge had already been filed and the State certainly has the right to proceed with any prosecution that is warranted under the factual situation.'

This court affirmed the action of the district court which found that Ford, after consulting with counsel appointed a week earlier, made a measured and deliberate choice and voluntarily entered a plea of guilty to the federal charge, and that it was a calculated move on his part to avoid what he considered a worse fate, i. e., his prosecution for additional offenses. Such was the case here.

\* \* \* \* \* \*

"Here, Meyer made a deliberate and measured choice, i. e., he pleaded guilty to one offense in the hope of

---

5. As pointed out by the Supreme Court in *McCarthy,* the Advisory Committee on Criminal Rules suggests three methods of determining whether a factual basis exists for a plea of guilty. "(1) inquiring of the defendant; (2) inquiring of the prosecutor; (3) examining the presentence report." McCarthy v. United States, 394 U.S. 459, 463, n. 6, 89 S.Ct. 1166, 1169, 22 L.Ed.2d 418 (1969).

The pre-sentence report indicates that petitioner fraudulently obtained the use of automobiles on twelve occasions by writing bad checks, and would abandon these cars prior to obtaining another. He was finally arrested in South Dakota. Petitioner had been arrested no less than eight times, but had received only light sentences or probation. At the time of his arrest, there were state and federal charges pending against him, and the record indicates that these charges were dropped. While incarcerated for this offense, petitioner escaped from the Federal Correctional Institution at Sandstone, Minnesota, and was sentenced to two years on a plea of guilty to that offense, to be served consecutive to the sentence imposed in this case. Subsequently the pending Minnesota state charges on a similar offense were dropped as a result of petitioner's plea of guilty. In light of this record and the files contained therein, it seems incredible to conclude that petitioner did not understand the nature of the proceeding, and the events taking place at the time of his arraignment and sentencing.

getting a lighter sentence than if he were tried for two offenses, and he is bound by his plea." *Id.* 424 F.2d at 1188–1189.

Lupo pleaded guilty to a federal charge and was successful in getting certain state charges pending against him dismissed. He made a deliberate and measured choice, and he is bound by his plea.

IV—Loss of the Sentencing Transcript

■ Petitioner's final contention is that the district court erred in denying an evidentiary hearing to determine what took place at the time of the sentencing, since there is no record or transcript of that proceeding. The court reporter informed petitioner she had lost the notes of the sentencing proceedings, and in a letter to him attempted to reconstruct the events of May 27, 1968. From that letter it is evident that petitioner was present in court, and was represented by an attorney. Petitioner's record was read in its entirety from the F.B.I. report. Petitioner's counsel urged leniency, and the court imposed a sentence of five years.

In Norvell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963), petitioner was convicted of murder in the state court in 1941. Because he was indigent he was unable to obtain a transcript at that time, and he did not pursue an appeal. In the wake of Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), requiring states to afford the same rights to transcripts to indigent defendants as those afforded non-indigent defendants, petitioner requested a copy of the transcript of his trial of some fifteen years previous. The court ordered the production of the transcript, but the court reporter had

died some years earlier, and his notes could not be read. The testimony was reconstructed through ten witnesses, and a new trial was denied. The Supreme Court concluded that it was not error to deny petitioner a new trial and stated:

"When, through no fault of the State, transcripts of criminal trials are no longer available because of the death of the court reporter, some practical accommodation must be made. * * * 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific. * * * What is best is not always discernible; the wisdom of any choice may be disputed or condemned.'" *Id.* 373 U.S. at 424, 83 S.Ct. at 1368. (citation omitted.)

Although we are not here confronted with an identical situation, we conclude that some practical accommodation should be made and has been made in this case. While it is unfortunate that the court reporter's notes of the proceeding have been lost, we are unable to discern how petitioner has been prejudiced thereby. Indeed, petitioner makes no such allegation of prejudice. Instead, he makes the bald assertion that an evidentiary hearing must be held to determine what happened at the sentencing. We do not think such is required. The transcript of the arraignment proceedings indicates that the plea of guilty was voluntary and understood by petitioner. The sentence imposed was within the statutory limits. It was not the maximum penalty which could have been imposed by the trial court. Under these circumstances we conclude that there was no error in denying an evidentiary hearing.

Accordingly, the judgment of the district court is affirmed.