Floyd E. CLARK, Petitioner,

v.

A. L. LOCKHART, Superintendent,
Cummins Unit, Arkansas Depart-
ment of Correction, Respondent.

No. PB-73-C-196.

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

July 29, 1974.

Robert A. Newcomb, Atty. for Inmates, Ark. Dept. of Correction, Pine Bluff, Ark., for petitioner.

Michael S. Gorman, Asst. Atty. Gen., Little Rock, Ark., for respondent.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This is a habeas corpus proceeding brought by Floyd E. Clark, an inmate of the Cummins Unit of the Arkansas Department of Correction. Petitioner seeks to vacate the judgment and sentence of the Circuit Court of St. Francis County, Arkansas, entered and imposed

in February 1971 following petitioner's conviction of the crime of first degree rape of the person of his eight year old stepdaughter. Ark.Stats., Ann., section 41–3401.

Petitioner's conviction was based on a plea of guilty. At that time the minimum penalty for first degree rape in Arkansas was imprisonment in the Department for not less than 30 years; the maximum punishment was death or life imprisonment. Ark.Stats., Ann., section 41–3403. Following acceptance of the plea a jury was empanelled to assess punishment, and the jury fixed petitioner's punishment at imprisonment in the Department for a term of 75 years.

Throughout the Circuit Court proceedings just outlined petitioner was represented by Henry Wilkinson, Esq. of Forrest City, Arkansas, who served by appointment of the Circuit Court, petitioner being an indigent. The plea of guilty was a bargained plea in the sense that the Prosecuting Attorney agreed that if petitioner would plead guilty, the State would not ask for the death penalty. It was understood that the State would press for life imprisonment, and that the defense would try to persuade the jury to assess the minimum punishment of imprisonment for 30 years.

Since petitioner was convicted on the basis of a plea of guilty, there was no direct appeal by him to the Supreme Court of Arkansas. However, after having been confined in the Department petitioner applied for post-conviction relief as provided by Criminal Procedure Rule 1 of the Supreme Court of Arkansas. Petitioner's original petition was dismissed summarily, but he was permitted to file an amended petition. In that petition he alleged that his plea of guilty was not entered voluntarily and understandingly, that he was not properly advised of his "Miranda rights" prior to signing a statement in which he confessed his guilt of the offense, that the Circuit Court had committed constitutional error in not appointing counsel for petitioner until four months after his arrest, that he did not have the effective assistance of counsel, and that the Circuit Court committed constitutional error when it instructed the jury as to the Arkansas law of parole.

New counsel was appointed to represent petitioner in the prosecution of his amended Rule 1 petition, and a full evidentiary hearing was conducted by a Circuit Judge other than the one who had imposed sentence. At the conclusion of the hearing the presiding Judge made full findings of fact and conclusions of law. All of the claims of petitioner was rejected, and his petition was denied. Petitioner appealed to the Arkansas Supreme Court, and the judgment of the Circuit Court was affirmed. Clark v. State, 1973, 255 Ark. (Adv. Ops.) 13, 498 S.W.2d 657. The instant petition was filed in this Court on October 25, 1973, and respondent concedes that State remedies have been exhausted.

The Court permitted the instant petition to be filed in this Court on petitioner's behalf by Mr. Robert A. Newcomb, Legal Adviser to Inmates of the Department, and petitioner was permitted to proceed in forma pauperis. In due course respondent filed a response to the petition conceding that State remedies had been exhausted but denying that petitioner was entitled to relief.

Along with the response was filed a complete transcript of the original proceedings in the Circuit Court and of the proceedings had in connection with Clark's Rule 1 petition. Before the Court could give that material detailed consideration, the Court of Appeals handed down its decision in Todd v. Lockhart, 8 Cir., 1974, 490 F.2d 626.

After reading the opinion in that case the Court came to the conclusion that the instant case should be developed more fully from a factual standpoint, and that depositions should be taken. The Court communicated its view to counsel on January 29, 1974.

Thereafter, by agreement of counsel the depositions of petitioner, Mr. Wilkinson, and Fletcher Long, Jr. of Forrest

City, Arkansas, who in 1971 was the Deputy Prosecuting Attorney for St. Francis County, were taken. The depositions were duly transcribed and filed, and the case was in effect submitted on the original transcript material and the depositions.

However, on June 25, 1974, the Supreme Court of the United States handed down its decision in Wingo v. Wedding, 1974, —— U.S. ——, 94 S.Ct. 2842, 41 L.Ed.2d 879, holding that in view of the wording of the federal Habeas Corpus Act an evidentiary hearing in a federal habeas corpus case must be held by a District Judge rather than by a United States Magistrate as provided by a Local Rule of the District Court.

On July 12 the Court addressed a letter to counsel inquiring of them as to whether they believed that the procedures that had been followed in this case with respect to depositions had offended the rule laid down in *Wingo*. At that time the Court was under the erroneous impression that the depositions had been taken before the United States Magistrate for this District. As stated, the depositions were taken by agreement and the proceedings were not presided over by any judicial officer.

On July 19 counsel for petitioner advised the Court that he felt that *Wingo* called for a hearing, and that petitioner was not willing to waive a hearing. On the same day counsel for respondent advised that he also considered a hearing to be necessary.

While the Court has doubted that the proceedings actually followed in the instant case would be invalid under *Wingo* absent an ore tenus hearing before the Court, the Court deemed it to be at least prudent to hold a hearing in open court and give the petitioner an opportunity to testify at that hearing.

Such a hearing was held before the undersigned on the morning of July 24, 1974, and petitioner testified in support of his petition. Neither side called any other witness. Petitioner's testimony at the hearing did not deviate substantially from the testimony that he gave in the Rule 1 hearing in the Circuit Court or that he gave when his deposition was taken; however, he did expand his remarks to some extent. The Court has considered his testimony along with all of the other evidentiary material before it, and has also considered the briefs submitted by respective counsel.

In his thorough brief in support of the petition counsel has argued the following questions: (1) Has the State met the burden of proving that petitioner knowingly and intelligently entered his plea of guilty with competent advice of counsel? (2) Was petitioner denied due process of law by the jury being informed of the amount of time a person had to serve before being eligible for parole? (3) Was petitioner denied due process of law by the failure of the Court to appoint counsel to represent him until four months after he was arrested? (4) Was the confession introduced in evidence in the course of the punishment trial obtained in violation of the due process clause of the Fourteenth Amendment?

 The Court will discuss those questions to the extent necessary for disposition of the case but not in the order in which they have been listed by counsel.[1]

1. The Circuit Judge who conducted the Rule 1 hearing made detailed findings of fact adverse to petitioner. As noted in the very recent case of McQueen v. Swenson, 8 Cir., 1974, 498 F.2d 207, under the 1966 amendment to 28 U.S.C.A., § 2254, which codified the holding of the Supreme Court in Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770, a federal habeas corpus court is required to treat State court factual findings as presumptively correct if they are made after a full and fair hearing and if they are fairly supported by the record. In *McQueen* the District Court dismissed the habeas corpus petition before it on the basis of the record made in the State courts of Missouri and held no evidentiary hearing. In the instant case, as has been seen, the State court record has been supplemented by depositions and by the ore tenus testimony of petitioner taken in open court. In such circumstances the Court considers it well to

It will be convenient to consider the issues presented by the petition in relation to the events that took place prior to petitioner's ultimate entry of his plea of guilty, what took place in connection with the Circuit Court's acceptance of that plea which was entered after an original plea of not guilty had been withdrawn, and with what took place in the course of the punishment hearing that was conducted before the jury.

The record reflects that in 1970–71 petitioner was 33 years of age, and that he had a long and troublesome history of alcoholism. He worked intermittently as an itinerant carpenter and painter, but was frequently discharged from his jobs because of his drinking. His drinking had also brought him into adverse contact with the law at the misdemeanor level; he had been convicted of driving while intoxicated, of public drunkenness, of fighting, and of having beaten his wife, the mother of the victim of his alleged rape.

Petitioner married the victim's mother when the child was about six months old, and petitioner professed great attachment to the little girl, although it does not appear that he ever made any contributions of a substantial nature to her support or welfare. The mother left petitioner while the couple was residing in Illinois and came to Forrest City, Arkansas, bringing the child with her. At that time the child was eight years old. The mother's sister and petitioner's mother both lived in Forrest City, and the child may have been placed with her aunt by the mother. At the time of the original Circuit Court proceedings involving petitioner, the child's aunt was acting as the child's foster mother.

After petitioner and his wife separated in Illinois, petitioner went to Mississippi where he worked for a time. In September 1970 petitioner came to Forrest City where he obtained work at a used car lot. On the date of the alleged

offense petitioner had been drinking as usual and was probably intoxicated to a greater or lesser degree, but he was not incapacitated by any means.

■ On the evening of the day of the alleged offense petitioner picked up the victim at her aunt's home for the ostensible purpose of carrying her to the home of his mother to spend the weekend. Instead of taking her directly to the home of his mother, petitioner, according to his later confession, and according to the testimony of the child, drove her in his automobile to a spot adjacent to Lake St. Francis and had sexual intercourse with her, lacerating her vagina to some extent in the process. If petitioner in fact performed that act, then, in view of the tender age of the child, which was well known to petitioner, he committed the crime of first degree rape regardless of whether the little girl consented to the act.

Again according to petitioner's confession and the testimony of the child, petitioner induced her to say that she had injured herself when she fell while playing on a trampoline earlier in the day. The child told that story; she was taken to a hospital, and a doctor was summoned. The doctor repaired the vaginal lacerations, and the child was released. The trampoline story seems to have been accepted initially by the third parties concerned, including the doctor.

On the following day the little girl advised relatives that she had been attacked by petitioner, and authorities were duly notified. The victim related to the officers what had happened to her and took them to the scene of the alleged rape.

Petitioner was arrested and questioned by the officers after he had signed what is sometimes called a "Miranda card" waiving the various rights referred to in Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Petitioner first denied that he had

rule on the petition on the basis of the record as a whole, including the depositions and the testimony of petitioner, without re-

gard to any presumption that the findings of the Rule 1 Court were correct or permissible.

had intercourse with the victim but after certain defects in his story had been brought to his attention, he confessed his guilt and signed a statement admitting guilt, which statement was prepared by one of the investigating officers. At some stage of the interrogation petitioner led the officers to the same place that had been identified by the victim as that at which she had been assaulted.

The alleged offense was committed on September 26, 1970, and petitioner was arrested and confessed on September 27. On October 1 the Prosecuting Attorney filed a criminal information in the Circuit Court charging petitioner with the offense of which he was ultimately convicted. Petitioner was not given a preliminary hearing, and since the offense charged was a capital one, he had no opportunity to secure his release on bail; however, there is nothing in the record to indicate that he could have furnished bail in any substantial amount. Petitioner remained in jail from the time of his arrest until final disposition of the case by the Circuit Court, except for a period spent in the Arkansas State Hospital in Little Rock for psychiatric evaluation. The State Hospital staff found that petitioner was without psychosis and expressed the view that he was mentally competent to stand trial and was probably legally responsible for his alleged act at the time of its commission.

On February 5, 1971, petitioner was formally arraigned and was advised of his right to counsel. When he stated that he wanted a lawyer but was financially unable to employ one, Mr. Wilkinson was appointed to represent him. After conferring briefly with petitioner Mr. Wilkinson entered a plea of not guilty for him, and the case was set for trial on February 16.

Thereafter Mr. Wilkinson conferred with petitioner several times and also interviewed the investigating officers and Deputy Prosecutor Long. He learned of the existence of the confession and the circumstances in which it was given. He also learned that the State would not seek to obtain the death penalty in the case if petitioner would enter a plea of guilty. However, it was made clear to counsel that the State would ask for a sentence of life imprisonment.

Initially petitioner stated to Mr. Wilkinson that he was innocent. However, when he was advised that Mr. Wilkinson knew of petitioner's confession, he admitted his guilt to his attorney. Mr. Wilkinson advised petitioner that the Prosecuting Attorney would waive the death penalty in exchange for a plea of guilty, and petitioner at length determined to plead guilty. The Court will return to this subject in due course.

When the case was called for trial on February 16, the plea of not guilty was withdrawn and a plea of guilty was entered and accepted by the Court without any formal compliance with the requirements of Boykin v. Alabama, 1969, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. A jury was empanelled to assess punishment, opening statements of counsel were made, and testimony, including that of the victim and of petitioner, was taken, the jury was instructed as to punishment, and the case was argued to the jury by counsel.

The victim testified as to petitioner's act of intercourse with her, and Mr. Wilkinson did not cross examine her. The investigating officers testified, and petitioner's confession was introduced in evidence. In his own testimony petitioner neither admitted nor denied that he had had intercourse with the child. Most of his testimony was biographical with a great deal of emphasis being laid on his drinking problem. In fact the trial strategy of the defense was to paint as favorable a picture of petitioner as possible, to put the blame for his conduct on drink, and to try to persuade the jury to return a verdict assessing the minimum punishment permitted by the statute or at least a punishment slightly in excess of the 30 year minimum.

After the jury had retired and had deliberated for a time, it returned to the

courtroom and inquired whether a person sentenced to life imprisonment would be eligible for parole. The Circuit Judge advised the jury that a person so sentenced would not be eligible for parole unless the Governor commuted the sentence to a term of years. The jury then resumed its deliberations and returned a verdict assessing punishment at imprisonment for 75 years. Sentence was duly pronounced and petitioner was committed to the Department where he is presently confined.[2]

## I.

The Court first considers the claim of petitioner that he was denied due process by reason of the Circuit Court's delay in appointing counsel to represent him.

■ It may readily be conceded to petitioner that a tardy appointment of counsel to represent an indigent defendant may amount to a denial of due process of law where the effect of the delay is to deprive the defendant of the effective assistance of counsel. Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 489; Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Powell v. Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Lupo v. United States, 8 Cir., 1970, 435 F.2d 519; Stamps v. United States, 8 Cir., 1967, 387 F.2d 993. See also this Court's unreported opinion in Wolfs v. Britton, E.D.Ark., 1974, Case No. PB–74–C–16.

■ Here, however, the Court is satisfied that the delay in the appointment of counsel did not prejudice petitioner in any way assuming that his representation by Mr. Wilkinson was otherwise effective, a point that will be discussed presently. So petitioner's contention based on the late appointment of counsel will be rejected.

## II.

■ From the record before it, including the deposition of Deputy Prosecutor Long, the Court finds that petitioner's confession was freely and voluntarily made after petitioner had been adequately advised of his Miranda rights.

Petitioner admits that he signed the "Miranda card" that has been mentioned. He testified, however, that he was not advised of his rights in terms that he could understand, and that in any event he was intoxicated at the time of his interrogation to such an extent that he could not intelligently waive his rights.

Petitioner is directly contradicted on those points by the testimony of the officer who prepared the statement and obtained petitioner's signature thereto and by the testimony of Mr. Long. Mr. Long testified that while petitioner had evidently been drinking, he had been arrested fairly early in the day and was not drunk. Mr. Long also testified that he personally advised petitioner of his rights in clear and simple terms.

No contention is made that the confession was the product of any force or threats or any promise of reward or leniency.

Thus, the Court finds and concludes that the confession was admissible in evidence, and that petitioner was not deprived of due process in connection with the obtaining of the confession or its use in the course of the punishment hearing.

## III.

It is earnestly contended by counsel for petitioner that the trial Court's instructions to the jury relative to parole amounted to constitutional error.

The record reflects that after it had retired initially to consider its verdict,

---

2. Under that sentence petitioner will be eligible for parole consideration at the expiration of one-third of the sentence less good time allowances. Ark.Stats., Ann., Cum.Supp., § 43–2807(c).

the jury returned into open court and the following colloquy took place:

"The Court: Did the jury have some question they wanted to ask?

"The Foreman: Yes, sir. In the determination, if a life sentence were given, what is the process for parole? What is the chance of parole? We understand where years are given that one-third, with good behavior, can be formulated to get the amount.

"The Court: There is no provision for parole on a life sentence. Under the law a person who is serving a life sentence, before he can be paroled there must be a commutation of the sentence by the Governor before he can be paroled. I can't tell you what the experience shows to be the average time.

"A Juror: May I ask a question? Does there have to be some intercession with the governor for the man to get a chance for commutation?

"The Court: Yes, sir, the governor is the only one that can commute a life sentence to a term of definite years. Do you all understand that you may fix the punishment at either life imprisonment or a term of years, any number of years not less than thirty?

"The Foreman: Yes, sir, we understand that.

"The Court: I believe that is about the best I can answer your question, Mr. Foreman. I can only tell you what the law is. I can't tell you what the usual customs are, and what the experience shows them to be.

"You may retire."

It has frequently been held that it is prejudicial error for a trial court to instruct a jury concerned with the punishment to be imposed on a defendant should he be found guilty as to matters of parole eligibility, executive clemency, good time allowances, and the like. For a good collection of the cases dealing with the subject see the Annotation entitled, "Prejudicial Effect of Statement or Instruction Of Court As To Possibility of Parole or Pardon," appearing in 12 A.L.R.3d 832 et seq., following the text of the opinion of the Supreme Court of California in People v. Morse, 1964, 60 Cal.2d 631, 36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810. The reason for the holdings is that such instructions permit the jury to consider future events with which it is not legally concerned and which are under the control of the legislative and executive branches of government and may lead a jury to assess a longer term of imprisonment than it would otherwise impose on the basis of a speculative belief that the defendant will be released after serving substantially less time than called for by his sentence.

Prior to the decision of the Supreme Court of Arkansas in Andrews v. State, 1971, 251 Ark. 279, 472 S.W.2d 86, Arkansas holdings with respect to the propriety of instructing trial juries about parole eligibility of defendants were not harmonious. The question was settled in *Andrews*. In that case the foreman of the jury requested instructions from the Circuit Judge about the parole eligibility of the defendant, and the Judge gave him detailed instructions in the absence of other members of the jury. The conviction of the defendant was reversed by the Supreme Court on the narrow ground that the instructions were given to the foreman of the jury rather than to the entire jury. However, the Court went on to disapprove the giving of such instructions. But, the Court specifically refused to make its decision retroactive and in that connection stated that the problem was procedural only. *Andrews* was decided several months after petitioner received his sentence.

In petitioner's case the Arkansas Supreme Court took the position that while it had disapproved of the giving of instructions about parole eligibility in the Andrews case it had not done so on constitutional grounds, and it rejected petitioner's contention based on the colloquy heretofore set forth. 498 S.W.2d at 662–663.

■ Ordinarily, a federal habeas corpus court does not grant relief on the basis of an error of a State court in instructing a jury unless the instruction is

so grossly erroneous as to be fundamentally unfair and thus deny the defendant due process of law, Higgins v. Wainwright, 5 Cir., 1970, 424 F.2d 177; McDonald v. Sheriff of Palm Beach County, Fla., 5 Cir., 1970, 422 F.2d 839; Murphy v. Beto, 5 Cir., 1969, 416 F.2d 98; Gomez v. Beto, 5 Cir., 1968, 402 F.2d 766; United States ex rel. Sliva v. Pennsylvania, E.D.Pa., 1961, 196 F.Supp. 50; or unless the instruction incorporates a rule of State law which itself is unconstitutional, Stump v. Bennett, 8 Cir., 1968, 398 F.2d 111.

A case can perhaps be imagined in which the giving of an instruction about parole eligibility and related matters could be so prejudicial to the defendant as to deny him due process of law. But the Court does not consider that this is such a case.

Assuming that the trial Judge erred in answering the jury's questions as he did, the Court does not consider the error to have been of constitutional magnitude. The statements of the trial Judge did not resemble the instructions given in Andrews v. State and People v. Morse, both supra; the trial Judge simply stated to the jury correctly that under Arkansas law a person sentenced to life imprisonment is not eligible for parole unless his sentence be commuted to a term of years, Ark.Stats., Ann., Cum. Supp., section 43–2807(b), and that the matter of commutation was up to the Governor. The trial Judge did not affirmatively instruct the jury as to the Arkansas statutes dealing with parole and good time allowances to convicts and was careful to tell the jury in effect that he could not predict any probabilities as far as any parole of petitioner was concerned; and he repeated his instruction that it was the function of the jury to assess punishment either at life imprisonment or imprisonment for a term of years not less than 30.

Jurors are supposed to be people of common sense and reasonable information and it is to be presumed that they are aware of the institution of parole, that parole eligibility is generally based on service of a portion of the sentence originally imposed, and that depending on State law a person sentenced to imprisonment for life may or may not be eligible for parole.

As far as this particular jury is concerned, it is obvious from the foreman's initial inquiry that the jurors were aware, at least in a general way, that an Arkansas convict serving a term of years is eligible for parole after serving one-third of his sentence, less good time, but that they were uncertain as to whether a person sentenced to life imprisonment is eligible for parole. That was the narrow question asked, and the fact that it was asked indicates that at least some of the jurors were thinking in terms of life imprisonment. The Court answered the question succinctly and also answered the question of the individual juror as to whether some intercession would be necessary in order to obtain a commutation of a life sentence from the Governor.

The Court does not see that the asking of the questions by the jury or the trial Judge's answering of them as he did subjected petitioner to any fundamental unfairness or otherwise deprived him of due process of law. Indeed it is possible that had the questions not been asked and answered petitioner would have received a sentence of life imprisonment.

## IV.

The question of whether petitioner's plea of guilty was voluntarily and understandingly entered necessarily involves the question of whether he had the effective assistance of counsel prior to the entry of the plea.

Those questions, and the further question of whether petitioner had the effective assistance of counsel in the course of the punishment trial before the jury gain added significance from two very recent decisions of the Court of Appeals for this Circuit, McQueen v. Swenson, Warden of the Missouri State Penitentiary, 8 Cir., 1974, 498 F.2d 207, decided on June 4 of he current year, and Todd

v. Lockhart, supra.[3] Some comment on those cases seems appropriate by way of introduction to the discussion of the questions to be dealt with in this section and in the succeeding section of this opinion.

In Todd v. Lockhart, supra, the Court of Appeals held that in a post-conviction proceeding it may be shown that a plea of guilty was properly accepted even though the Court accepting the plea did not comply literally or mechanically with the requirements of Boykin v. Alabama, supra, but that if an effort to make such a showing is made by the State, the burden is on the State to prove that the defendant in the State court pleaded guilty voluntarily and with an adequate understanding of the nature of the charge, of the possible consequences of the plea, and of basic procedural rights that would be waived by a plea of guilty. As heretofore indicated, it was the Todd decision that prompted this Court to call for the taking of depositions in this case.

In McQueen, supra, the Court of Appeals indicated dissatisfaction with the rule that the effectiveness and adequacy of the assistance afforded to his client by an attorney is to be measured by the "mockery of justice" test laid down in earlier cases and strongly indicated preference for the rule that has been adopted in other Circuits that the quality of the representation afforded is to be measured by a reasonable or normal competency yardstick. While the Court of Appeals did not find it necessary in the particular case before it to reject categorically the earlier rule, this Court thinks it fairly predictable that in the future the adequacy and effectiveness of representation will be measured by reference to the questions of whether the attorney was reasonably competent and whether his representation of his client in the particular case was reasonably competent. And this Court will measure the representation afforded petitioner by Mr. Wilkinson by those standards.

As to the competency of Mr. Wilkinson as an attorney, the Court finds from the record that Mr. Wilkinson was fully capable of giving petitioner competent representation at all stages of the proceedings against him, and no contention is made to the contrary. As a matter of fact Mr. Wilkinson is now serving as Municipal Judge at Forrest City which is certainly a good indication that the people who elected him consider him to be competent.

The Court also finds that Mr. Wilkinson's representation of petitioner prior to the entry of the plea of guilty and in connection with the entry of the plea was sufficient both quantitatively and qualitatively to meet federal constitutional standards of adequacy and effectiveness of representation.

The Court finds that Mr. Wilkinson after his initial appointment conferred with petitioner on a number of occasions and also discussed the case with the officers and with Deputy Prosecuting Attorney Long. Mr. Wilkinson was first told by petitioner that he had not raped the victim and had not confessed. Mr. Wilkinson discovered that petitioner had confessed and that Miranda proceedings had been followed. When confronted with the confession by Mr. Wilkinson petitioner admitted that he had had intercourse with the child. Mr. Long made available to Mr. Wilkinson certain materials in his file including the report of the doctor who had examined the victim. There were no eye witnesses to the crime except petitioner and the victim, and Mr. Wilkinson can not be blamed for not undertaking to question her in view of her tender years and the nature of the offense. The Court thinks that the investigations conducted by Mr. Wilkinson adequately distinguish this case from the McQueen case, supra.

Wilkinson explained to petitioner that he had a right to a trial by jury, to con-

---

3. In the case last cited the Court of Appeals reversed this Court's decision that the plea of guilty in question had been voluntarily and understandingly entered notwithstanding the failure of the Circuit Court to comply literally with the requirements of Boykin v. Alabama, supra. Todd v. Lockhart, E.D. Ark., 1973, 360 F.Supp. 950.

front the witnesses against him, including the victim, and to have the benefit of cross examination of those witnesses. He also explained to petitioner that he had the right to take the stand but was not required to do so, and that if he did take the stand, he would be subject to a cross examination that might well be vigorous.

As to a possible jury verdict if petitioner stood trial on a plea of not guilty, petitioner was advised by counsel of the range of possible punishment should he be found guilty, with death being at one end of the spectrum and imprisonment for not less than 30 years at the other. Petitioner was also advised that the jury might find him not guilty. It was explained to petitioner that even if he received a death sentence, it might be commuted by the Governor. The possibility of parole was also discussed by petitioner and Mr. Wilkinson.

After the Prosecuting Attorney agreed to waive the death penalty,[4] petitioner was advised of that fact and of the fact that if he pleaded guilty a jury would be empanelled to assess punishment, and that the punishment might be life imprisonment or imprisonment for a term of years not less than 30, and it was made clear to petitioner that if he pleaded guilty, he would certainly receive a prison sentence.

■ Petitioner testified that Mr. Wilkinson did not advise him to the extent found by the Court and that he pleaded guilty because of repeated statements by Wilkinson that if he went to trial on a plea of not guilty and was convicted, he would certainly receive a sentence of death, and that the sentence would be carried out. Petitioner also testified that he was assured by Wilkinson that if he pleaded guilty he would not be subjected to cross examination, and that he would receive a short sentence and would be released in not more than two years.

The Court rejects that testimony. And the Court thinks that petitioner's testimony that he was told by Wilkinson that if he pleaded guilty he would be out of prison in two years is not only false but absurd as well. The Court finds that petitioner's plea was not the result of any pressure put on petitioner by Mr. Wilkinson or by anyone else, and that it was the result of his free and understanding choice, and the Court thinks that petitioner's decision to plead guilty was a wise one.

■ Mr. Wilkinson may have advised petitioner that it would be wise to plead guilty and thus avoid the possibility of a death sentence; if so, the advice given was sound. It is well to keep in mind the situation with which petitioner was faced. He was accused of having had sexual intercourse with an eight year old child which was bad enough at best, but in petitioner's case the offense was aggravated by the fact that the little girl was his stepdaughter; it was to be expected that the child would testify as to the event, and in addition petitioner had confessed to the crime, and Mr. Wilkinson had determined in his own mind that the confession could not be kept out of evidence. If, in such circumstances, Mr. Wilkinson advised his client to enter a plea of guilty, he did what any competent and conscientious attorney might have done in the same situation, and as a matter of fact he might have been taxed with a dereliction of duty had he not given such advice.

In the course of his deposition Mr. Wilkinson conceded that he did not advise petitioner that if he pleaded guilty

4. It might be noted at this point that at the time of the proceedings which the Court is describing Furman v. Georgia, 1972, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, which in effect outlawed capital punishment in Arkansas as well as in Georgia and other States, had not been decided, and the possibility that petitioner would receive a sentence of death was very real. Whether such a sentence, if imposed, would have actually been executed was another question. There were no executions in Arkansas during the two terms as Governor served by the late Winthrop Rockefeller, but at the time in question he had just gone out of office and it was too early in the first term of his successor, Governor Bumpers, for it to be known what his policy about causing death sentences to be executed would be.

he would waive any right to complain of pre-trial errors or illegal procedures of which the officers who investigated the case may have been guilty. Specifically, petitioner was not advised that if he pleaded guilty he would not be able to attack the confession that has been mentioned.

It may be conceded that Wilkinson would have done well to have advised petitioner in this area, but the Court does not think that his failure to do so tainted petitioner's plea of guilty with a denial of due process of law or amounted to inadequate representation by counsel. The Court does not consider that the validity of a plea of guilty depends upon whether a defendant when he enters the plea is cognizant of every conceivable collateral or side effect of the plea or that his attorney is constitutionally required to advise the defendant of every possible consequence of the plea, however remote.

In this case it is clear to the Court that petitioner knew that he had confessed to the crime; he knew that if he pleaded guilty a jury would be empanelled to assess punishment, and he must have known that the confession would in all probability be used against him. He knew that he did not have to plead guilty, and he knew that if he pleaded guilty he was going to prison. And he also had the other items of knowledge that the Court has mentioned.

With further regard to the failure of Wilkinson to advise petitioner that if he pleaded guilty he would waive any right he might have to attack the admissibility of the confession, it will be recalled that this Court has found in an earlier section of this opinion that the confession was admissible in evidence; hence, Wilkinson's failure to advise petitioner in this area was not prejudicial to him. Cf. McQueen v. Swenson, supra.

As stated earlier, the Court finds that Mr. Wilkinson's representation of petitioner from the time of the former's appointment down to and including the entry of the plea of guilty was constitutionally adequate. And the Court fur-

ther finds that the plea was entered voluntarily and understandingly, and that its acceptance by the Circuit Court did not offend due process of law.

## V.

Finally to be considered is petitioner's claim that he did not have the effective assistance of counsel at the punishment trial. The Court rejects that contention as being without merit and, indeed, insubstantial.

Counsel's trial strategy has been outlined already, and counsel's trial tactics were in line with that strategy. The only question for the jury to determine was whether to send petitioner to prison for life or whether to send him there for a term of years. Petitioner could only hope that the jury would adopt the latter alternative, and that the term assessed would be the minimum or close to it.

Petitioner complains that Wilkinson did not cross examine the victim. Wilkinson chose not to do so as a matter of trial tactics; the Court thinks that his choice was not only permissible but wise. The child's testimony was devastating and calculated to arouse the indignation of the jurors. Had Wilkinson undertaken to cross examine the little girl, he might well have eliminated any chance of his client receiving a comparatively light sentence. The jury was probably inflamed enough as it was, and a cross examination of the victim might well have inflamed the jury still further, especially had the child broken into tears or manifested emotion otherwise. Mr. Wilkinson testified that he wanted to get the child off of the stand and out of the courtroom just as quickly and quietly as possible, and the Court thinks that his desire was a wise one.

Another complaint that petitioner makes is that Mr. Wilkinson did not challenge a juror who was personally acquainted with petitioner and who emerged as foreman of the jury. Whether or not a particular juror should be challenged is a question that addresses itself to the discretion of trial counsel, and ineffective representation is not

shown merely by the fact that counsel may have made a mistake not to challenge the juror. In any event, it appears that Wilkinson exercised all of his peremptory challenges.

Petitioner gave Mr. Wilkinson the names of certain witnesses who might have testified that petitioner bore a good reputation. Wilkinson discovered in advance of the trial that the prospective witnesses in question had such reputations themselves that their testimony as to petitioner's reputation would probably have been of no value to petitioner, and they were not called. This was another question of trial tactics, and whether counsel answered that question wisely or unwisely does not rise to constitutional dignity.

On the whole case the Court finds ultimately that petitioner has not been deprived of his liberty without due process of law, that his conviction was valid, and that his petition must be dismissed.

Judgment of dismissal will be entered. Mr. Newcomb is requested to advise petitioner of his appellate rights and to present a notice of appeal and an application for a certificate of probable cause if petitioner desires to appeal. No additional affidavit of poverty need be filed.